HELEN VAN DEUSEN et al., Appellants, *v.* RAYMOND S. JACKSON et al., Constituting the Board of Zoning Appeals, Town of Southampton, Respondents.

Second Department, July 13, 1970.

*Shanley & McKegney* (*Osborne A. McKegney* of counsel), for appellants.

*Eugene R. Francolini* for respondents.

Hopkins, J. The appellants are the owners of land adjacent to 7.365 acres owned by Anthony Froelich in the Town of Southampton. Froelich applied in 1969 to the respondents (constituting the Board of Zoning Appeals) for a variance of the zoning ordinance as it affected his property.

As reasons for the variance he represented that he had filed a subdivision map in 1962, at which time the property was located in the Residence C district. One lot on the map had been sold prior to 1966. In 1966 the Town Board changed the district of his property and surrounding property to Residence A. The variance which he sought was in effect to remove the restrictions imposed by the ordinance under Residence A zoning and to permit the development of the remaining land as shown on the subdivision map in accordance with Residence C zoning.

The ordinance required a minimum of 40,000 square feet for each lot in the Residence A district and a minimum of 15,000 square feet for each lot in the Residence C district. Each of the 13 lots shown on the subdivision map contained about 20,000 square feet. Hence, Froelich's application for a variance necessarily entailed changes in the area requirements of the ordinance, as well as the front, side and rear yard restrictions.

In support of the application at the hearing before the respondents, Froelich's attorney claimed that the zoning change in 1966 was unknown to Froelich and "he sat back and did nothing." He urged approval of the variance because the character of the neighborhood would not be adversely altered. At the adjourned hearing of the application he submitted a new map showing a plot plan of nine lots, each of a minimum of 25,000 square feet in accordance with Residence B district requirements; and he requested an approval of a variance of the ordinance so as to permit the development of the property pursuant to the new map.

The respondents granted the variance to meet the Residence B district restrictions and the appellants brought this proceeding under article 78 of the CPLR to review the determination. The Special Term dismissed the proceeding, finding that the respondents had acted within their powers and that their determination was reasonable. On this appeal, the appellants contend that the respondents overstepped their authority to encroach on the jurisdiction of the Town Board and the Town's Planning Board; and that, assuming the respondents proceeded within their

authority, still on the record before them the applicant for the variance established neither unnecessary hardship nor practical difficulty.

The texture of the appellants' argument draws into focus the relationship between the governmental agencies concerned with zoning. In broad terms, the legislative body (here the Town Board) enacts the ordinance defining the uses of property in districts in locations referable to the zoning map; an administrative body (here the respondents) tempers the effect of the ordinance when occasion warrants under prescribed standards; and a second administrative body (here the Planning Board) supervises the development of land by subdivision controls, again under prescribed standards.[1] The question before us concentrates our examination to the points where the boundaries of the respective powers of these governmental agencies converge.

A zoning board of appeals cannot under the semblance of a variance exercise legislative powers (*Matter of Levy* v. *Board of Stds. and Appeals of City of N. Y.*, 267 N. Y. 347, 352–354; *Old Farm Road* v. *Town of New Castle*, 26 N Y 2d 462). The legislative body forms zoning policy in the shape of a comprehensive plan after " reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses." (Town Law, § 263). The comprehensive plan, essentially general in scope, may cause disproportionate injury to a property owner and, for the purpose of easing that injury, the board of appeals hears and determines individual applications for relief " in harmony with * * *" [the] general purpose and intent " of the ordinance (Town Law, § 261); and its determination to grant a variance must rest on " practical difficulties or unnecessary hardships in the way of carrying out the strict letter of such ordinances " (Town Law, § 267, subd. 5). Thus, the statute makes plain that both the general purpose and intent of the ordinance, reflecting the policy of the legislative body, and the special case of the individual property owner, reflecting a practical difficulty or unnecessary hardship, must be considered by the board of appeals in varying the application of the ordinance.

When the variance violates the general purpose of the ordinance, the board of appeals invades the province of the legislative body, and the grant is invalid for want of authority (*Matter of Reed* v. *Board of Stds. and Appeals of City of N. Y.*, 255 N. Y.

---

1. It should of course be noted that the Planning Board also acts under certain circumstances in an advisory capacity to the Town Board (cf. Town Law, §§ 274, 275).

126, 135–136; *Matter of Thomas* v. *Board of Stds. and Appeals of City of N. Y.*, 290 N. Y. 109, 114). More precisely, the board of appeals must make certain that the effect of a variance would not introduce such an incongruity into the ordinance that the zoning pattern would be seriously disarranged. The size of the parcel to be benefited by the variance thus becomes a significant factor. In *Matter of Beach Haven Jewish Center* v. *Foley* (13 N Y 2d 973, revg. 18 A D 2d 917) the dissenting opinion of Mr. Justice [now Presiding Justice] CHRIST in this court was approved and a variance annulled by the Court of Appeals where a business use (a shopping center) had been permitted to be located throughout an entire block in a residential district for a 20-year term. As Mr. Justice CHRIST said in his opinion, " by its very size and authorized duration, the permitted structure will necessarily defeat the general design of the Zoning Law " (*id.*, 18 A D 2d 917, 918). In other cases the size of the parcel has been held to constitute a barrier to the granting of a variance (*Matter of Northampton Colony* v. *Board of Appeals of Inc. Vil. of Old Westbury,* 30 Misc 2d 469, affd. 16 A D 2d 830 [5½ acres] ; *Matter of Hess* v. *Bates,* 17 Misc 2d 22 [40 acres] ).

Though the size of the parcel here involved is considerable (7.365 acres), we think that the other factors in the case, coupled with size, lead to the conclusion that the variance granted to Froelich overran the powers of the respondents. What the object of the variance sought by Froelich in reality encompassed was the sanction of the development of his land as a subdivision at odds with the ordinance. Not one parcel, but 13 lots were the subjects of the original application; and, as the result of the respondents' action, Froelich obtained variances for 9 lots (12 of the original lots). Hence, it may reasonably be foretold that the sale of each of the 9 lots will be separately made and that each will be improved by a house built under the less stringent regulations of a district not in conformity with the plan of the ordinance and the intent of the Town Board.

We do not believe that the power to control the subdivision of land was entrusted to a zoning board of appeals. The Town Board under the provisions of the Town Law delegated that authority to the Planning Board (Town Law, §§ 276, 277). The exercise of the authority to supervise the character and improvement of subdivisions is consistent with the statutory provision that the Planning Board is empowered to prepare a comprehensive master plan for the future development of the town (Town Law, § 272-a). The regulation of subdivisions falls naturally into the pattern of that development. To that end the Planning

Board " shall take into consideration the prospective character * * * [of the subdivision], whether dense residence, open residence, business or industrial " (Town Law, § 277, subd. 2).

Accordingly, the function of the Planning Board as to the subdivision of land provides for an orderly and compatible enforcement of policy along the lines of fixed standards. The entrance of the Board of Zoning Appeals into this area of control would not only rupture the statutory scheme but also interrupt the enforcement of the policy designed by the Planning Board.

Even the Planning Board, it must be observed, in discharging its function is explicitly prohibited from trespassing on the legislative powers of the Town Board. The Planning Board may be authorized by the Town Board to modify the zoning ordinance under certain conditions. But the modification cannot result in more dwelling units than the applicable provisions of the ordinance would permit (Town Law, § 281, subd. [b]). In the present case, it is clear that the variance granted by the respondents will accommodate the potential erection of more dwellings under the Residence B district than the ordinance would allow in the Residence A district, in which the subdivision is located — an option not open to the Planning Board (cf. Matter of Hiscox v. Levine, 31 Misc 2d 151).

Finally, the determination of the respondents cannot be supported even on the assumption that they were authorized to proceed in the area of subdivision control. As was noted above, the power of a zoning board of appeals to vary the ordinance may be exerted only where the applicant demonstrates that the ordinance has created practical difficulties or unnecessary hardships. All that Froelich proved before the respondents was that he had failed to develop his property before the time that the ordinance was amended to place it in a more highly restricted district. To put it bluntly, convenience rather than hardship to the developer was the evidence before the respondents; and that ground cannot serve as a foundation for the variance (Matter of Otto v. Steinhilber, 282 N. Y. 71, 75–76; Matter of Hickox v. Griffin, 298 N. Y. 365, 370–371). No proof was offered of economic loss growing out of a showing that a reasonable return could not be expected from the property as zoned under the ordinance (cf. Matter of Crossroads Recreation v. Broz, 4 N Y 2d 39, 46; Matter of Jayne Estates v. Raynor, 22 N Y 2d 417, 423–424).

For these reasons the judgment should be reversed, on the law, without costs, and the determination of the respondents granting the variance should be annulled.

MUNDER, J. (dissenting). The sole issue here is whether the respondent Board of Zoning Appeals exceeded its power in granting Froelich a variance.

Under the Zoning Ordinance of the Town of Southampton, the board is empowered to grant variances in cases of hardship or practical difficulties as long as the general scheme or "the spirit of the Ordinance" is observed. The parcel involved at bar consists of 12 lots which were part of a subdivision map filed in the County Clerk's office in 1962. The map showed the existence of a paved road, Pleasant Lane, which was constructed at the town's insistence. Subsequent to the filing of the map the parcel was upzoned in 1966 from a " C " zone, requiring a minimum of 15,000 square feet, to an " A " zone, requiring a minimum of 40,000 square feet. Each of the 12 lots consisted of approximately 20,000 square feet.

When Froelich applied for his variance in early 1969 to build according to " C " zone requirements (in the " A " zone), he indicated his willingness to meet zone " B " requirements (requiring a minimum of 25,000 square feet) by reducing the number of his individual lots from 12 to 9. This is the plan approved by the Board of Zoning Appeals, namely, Froelich was granted permission to develop nine lots, each with 25,000 square feet, in an area requiring a minimum of 40,000 square feet.

In my opinion, this was not an unreasonable change. Froelich established practical difficulty and financial hardship when he showed that conformity with " A " zone requirements would necessitate an abandonment of the filed map, and significant economic injury to him (see *Matter of Fulling* v. *Palumbo*, 21 N Y 2d 30, 33). And, as noted by the board, the change requested by Froelich would effect no appreciable change in the neighborhood. The property is bounded on two sides by a cemetery and, as stated by one of the board members, " nothing else can be done " with it. The nearest residences are on lots considerably smaller than those approved here.

In *Matter of Beach Haven Jewish Center* v. *Foley* (13 N Y 2d 973, revg. 18 A D 2d 917), cited by the majority, the variance permitted the construction of a business structure in a residential zone. Clearly, as Mr. Justice [now Presiding Justice] CHRIST pointed out, that was not in harmony with the general purpose and intent of the applicable zoning resolution. Here, however, we have " harmony " with the applicable ordinance in that permission was granted for residential development in a residential zone, and the plots to be developed are considerably larger than those in the immediate neighborhood.

The other cases cited by the majority are distinguishable. For instance, in *Matter of Northampton Colony* v. *Board of Appeals of Inc. Vil. of Old Westbury* (30 Misc 2d 469, affd. 16 A D 2d 830) permission was sought, as it was in the *Beach Haven Jewish Center* (*supra*) case, to change an area zoned residential to business; and in *Matter of Hess* v. *Bates* (17 Misc 2d 22) the area involved (40 acres) was so much greater than that at bar that no comparison is proper. In *Hess*, there was no attempt to change a residential zone to a business zone, but there does come to a point when the area involved is so great that a change, e.g., from Residential "A" to Residential "B", constitutes a legislative act by an administrative body. In those cases, the "spirit of the Ordinance" is no longer respected.

Considering its location and the surrounding property, the area involved here is relatively small (less than eight acres) and, since Froelich established practical difficulty in complying with the ordinance, and since the variance as granted would not effect a change in the character of the neighborhood, but in fact would improve its residential quality, the board's determination was not an unlawful usurpation of legislative powers and should be confirmed (see *Matter of Hoffman* v. *Harris*, 17 N Y 2d 138; *Matter of Wilcox* v. *Zoning Bd. of Appeals of City of Yonkers*, 17 N Y 2d 249).

Accordingly, I dissent and vote to affirm the judgment.

CHRIST, P. J., and BRENNAN, J., concur with HOPKINS, J.; MUNDER, J., dissents in an opinion, in which RABIN, J., concurs.

Judgment reversed, on the law, without costs, and determination annulled.