■ In the Matter of CONCERNED CITIZENS AGAINST CROSSGATES et al., Petitioners, and SIERRA CLUB, Intervenor-Petitioner, v ROBERT F. FLACKE, as Commissioner of the New York State Department of Environmental Conservation, Respondent, and PYRAMID CROSSGATES COMPANY, Intervenor-Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Commissioner of the State Department of Environmental Conservation which granted certain permits to intervenor-respondent. In June, 1979, Pyramid Crossgates Company (Pyramid) applied to the Department of Environmental Conservation for permits pertaining to stream protection, impoundment structures, freshwater wetlands, indirect sources of air pollution and discharges to the waters of the State, which were needed by Pyramid for the construction of a proposed regional shopping mall in Albany County. Following preliminary proceedings and 81 days of hearings, in which petitioners participated, the Administrative Law Judge issued his hearing report which contained numerous findings of fact and a recommendation that the permits be denied. Respondent commissioner substantially adopted the report, but rather than deny the permits the commissioner concluded that there were certain points which had not been sufficiently addressed by the parties to enable completion of a final environmental impact statement and a final determination on the permit applications. The commissioner provided a detailed list of the "shortcomings" and directed Pyramid to submit relevant information within six months. He further directed that copies of all submitted material be made available to all parties who actively participated in the hearing, and he afforded all parties the opportunity to establish the need for further hearings. After reviewing all submittals, comments, and replies filed by Pyramid and other parties pursuant to his prior decision, the commissioner determined that an adjudicatory forum was not necessary for resolution of the remaining issues. Thereafter, the commissioner issued a determination denying the permits "upon technical grounds consisting of an interaction between traffic analyses and air quality modeling". He concluded that since Pyramid had met all other criteria for the issuance of the permits, and since the record suggested that Pyramid might be able to demonstrate specific mitigation measures to reduce projected carbon monoxide concentrations to satisfactory levels, Pyramid should have a reasonable time

within which to reapply for the permits. Pyramid thereafter reapplied, submitting the required data on mitigation of projected carbon monoxide levels, and all parties were afforded the opportunity to examine Pyramid's submission and file comments establishing the need for further hearings. After reviewing the data and comments submitted on the reapplication, the commissioner, in a decision signed by the first deputy commissioner, concluded that further hearings were not necessary. By final determination issued September 18, 1981, the commissioner granted Pyramid's permit applications upon certain conditions not relevant to this proceeding. Petitioners then commenced this article 78 proceeding to review the final determination and the matter was transferred to this court by Special Term. Petitioners first contend that the commissioner's actions violated several statutory requirements, but in our view the only one of these contentions requiring discussion relates to the commissioner's decisions to accept and rely on data submitted by Pyramid without conducting further hearings. Petitioners describe the commissioner's actions as terminating the adjudicatory hearing and granting the permits based upon ex parte hearsay submissions. It is clear, however, that after the hearings had ended and the official record was closed, the commissioner decided to reopen the record for the limited purpose of allowing the submission of data relevant to certain specific and narrow unresolved portions of some of the issues considered at the hearings. Since all parties were afforded the opportunity to review the data submitted by Pyramid and to file comments and other relevant information, the submission can hardly be termed ex parte. Moreover, whether the commissioner relied on hearsay is irrelevant as long as there is a rational basis for his determination (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 181-182), and petitioners' suggestion that the legal residuum rule is applicable here is incorrect (*id.,* at p 180, n). The need for a hearing and petitioners' entitlement to participate therein are governed by the State Administrative Procedure Act and ECL article 70. Article 3 of the State Administrative Procedure Act mandates the procedure that must be employed in adjudicatory hearings, and ECL 70-0119 (subd 1) requires a public hearing on an application for a permit "where any comments received from members of the public or otherwise raise substantive and significant issues relating to the application and resolution of any such issue may result in denial of the permit or the imposition of significant conditions thereon". The original permit applications and comments thereon obviously raised "substantive significant issues", resulting in 81 days of public hearings conducted in accordance with the procedural requirements of the State Administrative Procedure Act, in which petitioners actively participated. After these hearings were completed and the record officially closed, the commissioner determined that certain narrow points of some of the major issues considered at the hearings were unresolved and he reopened the record to allow submissions on these unresolved points. He interpreted the statute as requiring further hearings only if the comments received on these submissions raised the "substantive and significant issues" referred to in ECL 70-0119 (subd 1). We see no basis for disturbing this practical construction, involving operational practices, by the administrative officer responsible for administering the statute (see *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459). Nor do we see any reason for disturbing the commissioner's determination that the remaining unresolved issues were not "substantive and significant" within the meaning of ECL 70-0119 (subd 1). It does not necessarily follow, as petitioners suggest, that since the numerous issues raised by the original permit applications and comments thereon were sufficient to require a hearing, any unresolved portion of one or more of those issues, no matter how narrow or limited, is also sufficient to require further hearings. An examination of the parties'

submissions and comments in response to the commissioner's decisions allowing the applicant to submit further data and to reapply based upon certain other data reveals a rational basis for the decision not to hold further hearings. Indeed, even in this proceeding, petitioners have made no attempt to show the utility of further hearings, except to allege that cross-examinations might have exposed some weakness in Pyramid's submissions. Such an allegation is insufficient to establish that the commissioner erred in finding the remaining issues not "substantive and significant" within the meaning of ECL 70-0119 (subd 1), particularly since many of the experts who made the submissions had been cross-examined in the prior hearings. Accordingly, we find no merit to petitioners' claim that the procedure employed by the commissioner violated either article 70 of the Environmental Conservation Law or article 3 of the State Administrative Procedure Act. We also reject petitioners' claim that certain rulings made by the Administrative Law Judge during the hearings require that the commissioner's determination be annulled. These rulings involved the exercise of discretion and there is nothing in the record to indicate that discretion was abused. Also without merit is petitioners' claim that the determination must be annulled due to ex parte communications between department staff and officials of Pyramid. Only the commissioner, as the administrative officer assigned to render the decision on Pyramid's permit application, and the Administrative Law Judge, as the officer assigned to make findings of fact and conclusions of law, were prohibited from communicating with Pyramid or any other party (State Administrative Procedure Act, § 307, subd 2). Although First Deputy Commissioner Lanahan apparently met briefly with Pyramid officials, he stated in an affidavit that he did not participate in the decision-making process, except to sign an order implementing the commissioner's decision to deny further hearings on Pyramid's reapplication. The remainder of those who met with Pyramid officials were members of departmental staff. There is nothing in the record to support petitioners' claim that these staff members were acting as representatives of the commissioner in his decision-making capacity, rather than fulfilling their roles as public servants to provide assistance and information to the applicant. For example, the staff member who assisted in the preparation of the final impact statement did so pursuant to departmental regulation (6 NYCRR Part 617), and his role in doing so was not as a fact finder or decision maker in determining whether Pyramid was entitled to the permits. Under these circumstances, there was no violation of subdivision 2 of section 307 of the State Administrative Procedure Act (see *Matter of Flynn v Flacke,* 87 AD2d 930). Finally, there is no merit to petitioners' argument that Pyramid failed to consider alternatives as required by ECL 8-0109 (subd 2, par [d]). With regard to totally different sites for the entire project, Pyramid concluded in the final environmental impact statement that the proposed site was the only feasible one in the area for the construction of a regional shopping mall, and the commissioner accepted this conclusion, finding that it was based largely on Pyramid's business judgment. With regard to project alternatives within the site itself, the record reveals that Pyramid not only considered, but accepted a number of alternatives proposed to reduce environmental impact. In conclusion, since the errors alleged by petitioners do not require that the determination be annulled, and since the record contains substantial evidence to support the determination, the petition must be dismissed. Determination confirmed, and petition dismissed, without costs. Kane, J. P., Main, Casey and Yesawich, Jr., JJ., concur.

Mikoll, J., dissents and votes to annul in the following memorandum.
Mikoll, J. (dissenting). I respectfully dissent. The commissioner's failure to provide a public hearing on submissions made after the November 28, 1980

decision withholding the permits can only be proper if the issues remaining at that point were not substantive and significant. The issues remaining related to air quality analysis, storm water management, and traffic safety and are the self-same issues as were raised when the applications were initially filed and which were then found by the commissioner to be substantial and significant. I find the commissioner's later determination not to conduct a hearing to be irrational and arbitrary. Petitioners were deprived of their statutory right to cross-examination (see ECL 70-0119, subd 5; State Administrative Procedure Act, § 306, subd 3; 6 NYCRR 624.5 [b]). The determination should be annulled and the matter should be remitted for an adjudicatory hearing.