■ In the Matter of FRIENDS OF THE SHAWANGUNKS, INC., et al., Petitioners, v ROBERT F. FLACKE, as Commissioner of the New York State Department of Environmental Conservation, Respondent, and MARRIOTT CORPORATION, Intervenor-Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Department of Environmental Conservation which approved the issuance of a water supply permit to intervenor Marriott Corporation. Petitioners contend in this proceeding that respondent commissioner applied an erroneous standard of review to the evidence adduced at the hearing held in regard to the intervenor's project and erroneously issued a permit for the second phase of the project without an adequate basis under any standard. The project consists of a proposed development of a 400-room resort hotel and conference center and 300 condominiums, together with ancillary year-round recreational facilities, at Lake Minnewaska in Ulster County on an escarpment called Shawangunk Ridge where an older and more modest hotel complex, now in bankruptcy, was once located. In conjunction with its project Marriott proposes to install two wells to provide up to 100 gallons of water per minute as its primary source of water, estimating the average daily water demand at 113,000 gallons per day with peak use at 194,000 gallons per day for the entire project. To meet these needs Marriott would require water at an average rate of 78 gallons per minute and a peak rate of 134 gallons per minute. The decision of the administrative law judge, adopted by respondent commissioner, following hearings held between July 14, 1980 and March 6, 1981, granted the application for a water supply permit for the entire project, but conditioned approval of the construction of condominiums in excess of the first 50 on the amount of ground water actually obtained. At the hearing, the intervenor's experts testified to the installation of two wells capable of pumping 40 to 45 gallons per minute. On this evidence the hearing officer concluded that the intervenor had reasonably established that it could provide approximately 50% of the average demand for the entire project (62,000 gallons per day of the required 113,000 gallons per day), but only one third of the peak demand of 194,000 gallons per day. The hearing officer further concluded that this would be the "minimum ground water capacity needed for this first phase". This, therefore, was a proper exercise of discretion only in regard to the first phase. No evidence exists in the record as to the feasibility or the result of additional wells. The only testimony in regard to second wells was given in response to a question by the hearing officer that second wells could be installed in the vicinity of each of the two existing wells. Therefore, to extend the approval of the permit application to the second phase

was erroneous, since it lacks a substantial evidentiary basis. Further support for this holding comes from the condition that was attached to the permit which restricted construction of Phase Two on the intervenor's future ability to prove adequacy of supply beyond 40 gallons per minute. Although the commissioner has the authority to issue conditional water supply permits (ECL 15-1503, subd 3), he may not use that authority to avoid resolution of one of the issues that he is statutorily required to decide before issuing the permit (ECL 15-1503, subd 2). Adequacy of the water supply was concededly one of those issues found so "substantive and significant" as to require public hearings (see ECL 70-0119, subd 1). The commissioner contends that the only remaining issues as to adequacy of the water supply involve technical data which would not benefit by further hearings (see *Matter of Concerned Citizens Against Crossgates v Flacke,* 89 AD2d 759, 760). However, in view of the virtual absence of any evidence in the record as to the feasibility or the result of additional wells, there is no merit to this argument. Marriott had the burden of establishing its entitlement to the permit by a preponderance of the evidence that it would meet the requirements of ECL 15-1503 (subd 1). While that burden must be met in regard to the requirements of ECL 15-1503 (subd 1), the determination of the hearing officer, approved by the commissioner, is based on a broader range of factors (ECL 15-1503, subd 2) and must be supported by substantial evidence under 6 NYCRR 621.14 (k) (1) (repealed July 31, 1981). Contrary to petitioner's contention, there is no inconsistency in the two standards. The determination should be modified by annulling that part thereof which issued a permit for the second phase of intervenor's project and the matter remitted to the commissioner for further proceedings not inconsistent herewith. Determination modified, on the law, by annulling the portion thereof which approved intervenor's application for a water supply permit for the second phase of its proposed construction project, and matter remitted to respondent commissioner for further proceedings not inconsistent herewith, and, as so modified, confirmed, without costs. Main, J. P., Casey, Mikoll, Yesawich, Jr., and Levine, JJ., concur.