In the Matter of FRIENDS OF THE SHAWANGUNKS, INC., et al., Appellants, v FRANK KNOWLTON et al., Constituting the Planning Board of the Town of Rochester, Respondents, and MARRIOTT CORPORATION, Intervenor-Respondent.

Third Department, May 10, 1984

APPEARANCES OF COUNSEL

*Whiteman, Osterman & Hanna (Philip H. Gitlen* and *Carol S. Knox* of counsel), *William Ginsberg* and *Wapner, Koplovitz & Futerfas* for appellants.

*Arthur M. Kahn, Town Attorney,* for respondents.

*Miller, Mannix, Lemery & Kafin, P. C. (Benjamin R. Pratt, Jr.,* of counsel), for intervenor-respondent.

**OPINION OF THE COURT**

KANE, J.

This case concerns an approximately 450-acre[1] subdivision located on Lake Minnewaska, owned by Lake Minnewaska Mountain Houses, Inc. (Mountain Houses), in the Town of Rochester, Ulster County (see *Matter of Friends of Shawangunks v Flacke,* 92 AD2d 640). In 1977, Mountain Houses sold a conservation easement in 240 acres of its 450-acre subdivision (a golf course) to the Palisades Interstate Park Commission (Palisades). A covenant in the conservation easement prohibited the construction of more than one residential dwelling within the 240 acres subject thereto. On February 26, 1980, intervenor, Marriott Corporation (Marriott), pursuant to its plan to construct a resort hotel and 300 condominium units, entered into a conditional sales agreement with Mountain Houses for the 450-acre subdivision. One condition precedent to closing, among others, was that Marriott obtain a subdivision approval.

Accordingly, in April, 1982, Marriott filed an application with respondent Planning Board of the Town of Rochester (Planning Board) seeking, *inter alia,* final approval on the issue of total allowable density (see Town Law, § 281, subd [b]) and conditional approval of its preliminary subdivision plat. Marriott indicated that none of its 300 condominium units would actually be constructed on the 240 acres subject to the conservation easement. Rather, Marriott asked the Planning Board to modify the applicable one-acre-per-dwelling zoning ordinance so as to permit the clustering of 300 condominium units on a portion of the subdivision (approximately 210 acres) not subject to the conservation easement. To this end, Marriott contended that it could *include acreage subject to the conservation easement* for the limited purpose of making the density calculation necessary to build its 300 condominium units on less than 300 acres of the subdivision (Town Law, § 281, subd [b]).[2]

---

**1.** It should be noted that the record and briefs do not make clear the *exact* amount of acreage at issue in this case. Since there is no uniformity throughout the record and briefs, this court has chosen to use the acreage figures most often cited.

**2.** In making its application, Marriott chose to take advantage of the "Residential Cluster Development" provision within the Zoning Ordinance of the Town of Rochester, which permitted cluster development pursuant to section 281 of the Town Law.

Following notice to all relevant parties, the Planning Board held a public hearing on May 11, 1982 to consider Marriott's application. By decision dated August 10, 1982, the Planning Board (1) granted final approval on the issue of density, ruling that Marriott could count all acreage within the subdivision, *including acreage subject to the conservation easement,* in calculating total allowable density, and (2) granted conditional approval of Marriott's preliminary subdivision plat.

Thereafter, petitioners, two nonprofit corporations and eight individuals owning property in the immediate vicinity of the subdivision, commenced the instant CPLR article 78 proceeding on September 14, 1982 seeking a judgment vacating the Planning Board's decision. Petitioners alleged, *inter alia,* that the Planning Board erred in approving (1) the preliminary subdivision plat since Marriott was the contract vendee, rather than the owner, of the subdivision (Town Law, § 276, subd 3; § 281, subd [a]); (2) the preliminary plat in the absence of a submitted final plat (Town Law, § 276, subd 2); and (3) the inclusion of the 240 acres subject to the conservation easement in calculating the total allowable density of condominium units within the subdivision (Town Law, § 281, subd [b]). Following Marriott's intervention in the instant proceeding, Special Term, by judgment entered June 24, 1983, dismissed the petition. This appeal by petitioners ensued.

■ Initially, we reject petitioners' contention that Marriott was not a proper party to apply for subdivision approval. As Special Term correctly found, Marriott was an authorized agent of the owner of the property in question, Mountain Houses. Indeed, the Town of Rochester's subdivision regulations permit either the subdividing owner *or his authorized agent* to apply for approval of a proposed subdivision.

Similarly, we reject petitioners' assertion that the Planning Board granted final approval of the *proposed subdivision* in the absence of a submitted final subdivision plat (Town Law, § 276, subd 2). The record reveals that the Planning Board did not dispense with the requirement

that Marriott eventually submit a final subdivision plat for its approval. As Special Term recognized, the Planning Board was merely rendering final approval of that portion of the material before it concerning the narrow issue of density. There appears to be nothing in subdivision 2 of section 276 of the Town Law prohibiting such a common-sense practice.

We now turn to the principal issue in this proceeding which concerns the proper construction of subdivision (b) of section 281 of the Town Law. Petitioners contend that the Planning Board ignored subdivision (b) of section 281 of the Town Law by including acreage subject to the conservation easement (240 acres) in calculating the total allowable density of condominium units that would be permitted within the subdivision. Petitioners reason that, had the 240 acres subject to the conservation easement been excluded from consideration, as their construction of subdivision (b) of section 281 of the Town Law would have required, the proposed cluster subdivision's density — 300 condominium units on 210 (rather than 450) acres — would then have impermissibly *exceeded* the total allowable density authorized for a conventional subdivision. Accordingly, petitioners assert that the Planning Board improperly granted Marriott's proposed cluster subdivision application. Respondents' position is that the Planning Board properly exercised its discretion in interpreting the broad language of subdivision (b) of section 281 of the Town Law to permit the inclusion of acreage subject to the conservation easement in calculating the total allowable density of condominium units that would be permitted within the subdivision.

Generally, towns have no inherent power to enact or enforce zoning regulations since they exercise such authority solely by legislative grant. In the absence of a legislative delegation of power, their action is *ultra vires* and void (*Matter of Kamhi v Planning Bd.*, 59 NY2d 385, 389; *Riegert Apts. Corp. v Planning Bd.*, 57 NY2d 206, 209). One specific source of a town's authority to enact or enforce zoning regulations is section 281 of the Town Law — the enabling legislation for cluster-type zoning (see *Matter of Kamhi v Planning Bd., supra,* p 390). The section author-

izes a Planning Board, when considering residential plats, to *allow some deviation from the area restrictions* for lots found in the zoning ordinance (here, one acre per dwelling) (Town Law, § 281). However, *a Planning Board may not permit any deviation from density requirements* (see *Matter of Kamhi v Planning Bd., supra*). Thus, subdivision (b) of section 281 of the Town Law provides that: "The application of this procedure shall result in a permitted number of building plots or dwelling units which shall in no case exceed the number which could be permitted, in the planning board's judgment, if the land were subdivided into lots conforming to the minimum lot size and density requirements of the zoning ordinance applicable to the district or districts in which such land is situated *and conforming to all other applicable requirements*" (emphasis added).

As such, the statute (Town Law, § 281, subd [b]) directs that cluster-type zoning cannot be used to increase the number of dwelling units on a subdivision beyond the number that would have been permitted had conventional-type zoning been used (*Van Deusen v Jackson*, 35 AD2d 58, 62, affd 28 NY2d 608; *Kanaley v Brennan,* 119 Misc 2d 1003, 1009-1011; see, also, *Matter of Kamhi v Planning Bd., supra,* p 390 ["(t)he board may not permit any deviation from density requirements"]; *Matter of Hiscox v Levine,* 31 Misc 2d 151, 155; 4 Rathkopf, Law of Zoning and Planning [4th ed], pp 71-40 — 71-44).

As mentioned previously, 240 acres within the 450-acre subdivision were subject to a conservation easement which prohibited dwelling unit construction thereon. Thus, it appears that the number of dwelling units that would have been permitted had conventional-type zoning been used (one acre per dwelling) would have been 210 condominium units. Indeed, both the Planning Board, at least on July 8, 1980, and the New York State Department of State concurred with the above conclusion that acreage subject to the conservation easement cannot be used in calculating total allowable density.

■ Moreover, a reasonable construction of the phrase "and conforming *to all other* applicable requirements" (Town Law, § 281, subd [b] [emphasis added]) supports the conclusion that the conservation easement's requirements

must be recognized. As the conservation easement constitutes an "applicable" requirement, no density can be attributable to the acreage to which it applies. Consequently, despite the attractiveness of respondents' argument, we are compelled to conclude that the Planning Board improperly permitted Marriott to cluster its 300 condominium units.

The judgment should be reversed, on the law, without costs, and the petition granted to the extent that the determination of the Planning Board of the Town of Rochester with respect to the issue of density is annulled.

MAHONEY, P. J., CASEY and WEISS, JJ., concur.

Judgment reversed, on the law, without costs, and petition granted to the extent that the determination of the Planning Board of the Town of Rochester with respect to the issue of density is annulled.