In the Matter of DAVID MORSE et al., Appellants, v TOWN OF GARDINER PLANNING BOARD et al., Respondents.

Third Department, December 13, 1990

APPEARANCES OF COUNSEL

*Schisler, Sall & Schindler (Russell A. Schindler* of counsel), for appellants.

*Jacobowitz & Gubits (Larry Wolinsky* and *George Lithco* of counsel), for Vista Associates, respondent.

**OPINION OF THE COURT**

MERCURE, J.

In September 1987, respondent Vista Associates (hereinafter Vista) submitted an application for subdivision approval to respondent Town of Gardiner Planning Board (hereinafter the Board). Vista proposed to build 37 residential units on a 153-acre parcel in Ulster County which had previously been used as an operating dairy farm, located near the base of the northern ridge of the Shawangunk Mountains in the viewshed of Minnewaska State Park and the Mohonk Preserve. Identifying significant visual and traffic impacts, the Board classified the project as a type I action under the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA), determined that an environmental impact statement (hereinafter EIS) was required and declared its intent to be lead agency. During January and February 1988, Vista submitted traffic impact studies and, to supplement its previous submission on visual impact, presented videotaped views of the property from Minnewaska State Park. Vista also submitted a revised sketch plan reducing the number of proposed lots from 37 to

34 in order to reduce visual impacts and agreed to provide covenants and restrictions to govern house design and color and to provide a landscape plan with a detailed planting program. The Board then identified the potentially large impacts resulting from construction on agricultural land and in areas with a water table of less than three feet, and on aesthetic resources, transportation and the character of the neighborhood. The Board also determined that the cumulative impact of this and two other pending projects on area traffic patterns and visual impacts should be considered. Vista submitted a draft EIS in April 1988, together with studies which discussed and analyzed the identified areas of concern. The draft EIS also contained a discussion of three alternatives to the project, two of which were "clustering" alternatives.

Following public hearings and the receipt of extensive written and oral comments, Vista was directed to prepare the final EIS and to respond to certain issues raised during the public comment period. The final EIS was filed in August 1988 and contained additional elaboration and analysis in the areas of traffic, restrictive covenants, alternatives, water drainage and soil impacts, and visual and community impacts. Vista and the Board then reviewed and revised the final EIS and, finally, the Board accepted it in November 1988. In January 1989, the Board adopted the SEQRA findings and granted conditional preliminary plat approval, having found that, of the alternatives considered, Vista's plan was the one which minimized adverse environmental effects to the maximum extent practicable. Following Vista's submission of maps, engineering reports and application for final approval of section I of the subdivision, consisting of 17 of the 34 lots, the Board granted conditional final subdivision approval in June 1989. Thereafter, petitioners commenced this proceeding challenging the Board's action. Supreme Court dismissed the petition. This appeal by petitioners ensued.

▪ Initially, petitioners claim that the discussion of alternatives in Vista's EIS was insufficient. Specifically, petitioners contend that although the EIS did consider alternatives, it failed to consider the land-conserving clustered subdivision presented by petitioners at the public hearings. Contrary to petitioners' assertion, we conclude that the EIS complied with SEQRA guidelines, which require a discussion of all reasonable alternatives to the proposed action (see, ECL 8-0109 [2] [d]; [4]; 6 NYCRR 617.14 [f] [5]; *Horn v International Business Machs. Corp.*, 110 AD2d 87, 93-96, *lv denied* 67 NY2d 602;

*Matter of Environmental Defense Fund v Flacke,* 96 AD2d 862, 863-864) and not an exhaustive analysis of every conceivable alternative (see, *Matter of Residents for More Beautiful Port Wash. v Town of N. Hempstead,* 149 AD2d 266, 274).

Here, the draft EIS contained the proposed 37-lot subdivision, as well as a clustering alternative involving multifamily dwellings and one involving single-family dwellings on smaller lots with common open space, an alternative involving the transfer of land to a trust and the "no-action" alternative. The Board requested that Vista elaborate on the discussion of clustering alternatives as well as petitioners' proposal of preserving open space by transferring the land to a trust. Additional analysis of alternatives was provided in the final EIS. The Board then evaluated the project in light of its statutory mandate to select the alternative which limits impacts to the "maximum extent practicable" *(Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 415) and determined that the conventional subdivision was the preferred alternative. The Board, aware of the clustering alternative preferred by petitioners, as well as clustering alternatives contained in the EIS, noted that clustering would not be feasible due to existing deed restrictions, soil conditions and the unavailability of central water and sewer facilities. The record belies petitioners' contention that reasonable alternatives to the proposed action were not properly considered. The fact that petitioners disagree with the alternative chosen by the Board does not prove that the Board did not take the requisite "hard look" *(see, Akpan v Koch,* 152 AD2d 113, 119, *affd* 75 NY2d 561).

■ Unavailing also is petitioners' argument that the Board's analysis of the visual impact was insufficient and biased. We find no factual support in the record for petitioners' allegations of bias and the record demonstrates that the Board evaluated the visual impact of the project in considerable detail. Petitioners and their experts were full participants in the EIS review process and were given every opportunity to present their opinions to the Board. At the conclusion of the SEQRA process, the Board conditioned approval on several mitigation measures, including large lot sizes, restrictions on house colors, a mandatory planting program, the filing of covenants and restrictions, and imposition of a conservation easement. Although petitioners challenge the methods and qualifications of Vista's expert, the EIS need not achieve scientific unanimity on the desirability of proceeding with the

proposed action *(see, Matter of Schodack Concerned Citizens v Town Bd.,* 148 AD2d 130, 134, *lv denied* 75 NY2d 701).

■ Next, petitioners contend that the Board violated SEQRA by accepting a deficient draft EIS and including significant amounts of new information in the final EIS, thereby precluding public comment thereon. We disagree. The essential issues of concern were identified and discussed in the draft EIS, commented upon by petitioners and other members of the public, and responded to in the final EIS. Contrary to petitioners' assertions, the responses included in the final EIS provided clarifications of information already in the draft EIS or involved topics which were fully discussed at public meetings *(see, Webster Assocs. v Town of Webster,* 59 NY2d 220, 228-229; *Matter of Schodack Concerned Citizens v Town Bd., supra; Coalition for Responsible Planning v Koch,* 148 AD2d 230, 236, *lv denied* 75 NY2d 704). We conclude, therefore, that the final EIS was not used to correct a deficient draft EIS. Moreover, under the circumstances present here, a supplemental EIS was not required *(see,* 6 NYCRR 617.8 [g]; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 429, *supra; Coalition for Responsible Planning v Koch, supra,* at 234).

■ Petitioners also challenge the Board's failure to perform water quality and quantity tests and its reliance upon the opinion of the Ulster County Department of Health (hereinafter DOH) in this regard. It should first be noted that it is entirely proper for an agency to place reasonable reliance upon advice and information provided by an "involved" agency such as DOH *(see, Matter of Coca-Cola Bottling Co. v Board of Estimate,* 72 NY2d 674, 682). Here, the Board's specific request that DOH advise of any concerns that it might have concerning this action did not represent an abdication of responsibility, but, rather, literal and substantive compliance with SEQRA, ensuring that the EIS was complete and allowing DOH to comply with its SEQRA responsibilities *(cf., supra).* In any event, site specific studies were developed by Vista and reviewed by the Board. The draft EIS contains an engineering study of soil conditions and the soil's ability to support a septic disposal system, soil tests were discussed at the public hearing and the final EIS contained additional soil analyses. The record shows that the Board had sufficient information to assess the potential impacts on water quality and quantity, took a "hard look" at those areas and made a reasoned determination of significant effects, which were then

addressed in the EIS *(see, Matter of Stewart Park & Reserve Coalition v New York State Dept. of Transp.,* 157 AD2d 1, 7).

■ We also reject petitioners' argument that the Board, as lead agency, was required to contact and include the Palisades Interstate Park Commission, and the State Office of Parks, Recreation and Historical Preservation, agencies which administer Minnewaska State Park, in the environmental review process. Neither entity was an involved agency within the meaning of SEQRA since neither had any jurisdiction by law to approve this action *(see,* 6 NYCRR 617.2 [t]). As interested agencies *(see,* 6 NYCRR 617.2 [u]) at most, each had the burden "to make known their views on the action" (6 NYCRR 617.3 [i]). Indeed, petitioners do not dispute that the Board fully complied with the notice and public hearing requirements of SEQRA, which are reasonably calculated to ensure sufficient opportunity for participation of interested agencies.

■ Finally, petitioners' claim that the Board failed to consider the impact of the project on the solid waste management systems of the town and the county is meritless. An EIS need only address significant environmental impacts which can be reasonably anticipated *(Aldrich v Pattison,* 107 AD2d 258, 266) and, contrary to their assertion, petitioners have not demonstrated that there is a solid waste crisis in the county, nor how a 34-lot subdivision could have other than a minimal impact on the town and county solid waste disposal systems.

MAHONEY, P. J., CASEY, WEISS and LEVINE, JJ., concur.

Judgment affirmed, without costs.