[597 NYS2d 354]

FERNANDO FERRER, Individually and as Bronx Borough President, et al., Respondents, v ALBERT F. APPLETON, as Commissioner of the New York City Department of Environmental Protection, et al., Appellants.

First Department, May 11, 1993

## APPEARANCES OF COUNSEL

*Elizabeth Dvorkin* of counsel *(Leonard Koerner, Francis F. Caputo, Elizabeth St. Clair* and *Michael S. Bogin* with her on the brief; *O. Peter Sherwood, Corporation Counsel* of New York City, attorney), for Albert F. Appleton and another, appellants.

*Louise G. Roback* of counsel *(Andrea Green* and *Leslie Allan* with her on the brief; *Robert Abrams, Attorney-General,* attorney), for Thomas C. Jorling and others, appellants.

*Stuart A. Blander* of counsel *(Adam D. Eilenberg, Juan Cartagena* and *Nitza M. Escalera* with him on the brief; *Heller, Horowitz & Feit, P. C.,* and *Community Service Society of New York,* attorneys), for respondents.

## OPINION OF THE COURT

KUPFERMAN, J.

Inasmuch as the New York State Department of Health requires the incineration of infectious hospital waste, chapter 1 of title 24 of the Administrative Code of the City of New York (Air Pollution Control Code) permits the installation and use of refuse burning equipment by hospitals and other medical facilities for such purpose as long as the incinerator is operated by the medical facility.

On November 30, 1988, the New York City Department of Environmental Protection, in order to guide medical facility applicants, issued a policy directive, the purpose of which was to define the term "operated by" and to establish minimal operating requirements for hospital incinerators located in New York City. To that end, it defined "operated by", as included in section 24-118 of the Administrative Code, by providing, in pertinent part, that any hospital or other medical facility which was permitted to install such a medical waste incinerator must maintain full liability and responsibility for the operation of its incinerator but, on certain conditions, may retain an independent contractor to operate such equipment on a day-to-day basis.

On October 11, 1989, after the completion of the requisite SEQRA review to examine potential environmental impacts, particularly the risk of harmful emissions arising out of the design or operation of the proposed incinerator, respondent New York State Department of Environmental Conservation (DEC) issued a part 360 (6 NYCRR part 360) permit to Bronx-Lebanon Hospital to construct a medical waste incinerator at East 138th Street and Locust Avenue in the Port Morris section of the Bronx.

As a condition of that permit, Bronx-Lebanon was required to conduct a "shakedown" or trial run after construction was complete. The issuance of a subsequent—and separate—operating permit would then be contingent on the success of the trial run. The entire purpose of this preliminary testing is to determine whether, despite conformity with the design specifications, any harmful emissions do, in fact, leak out.

Although the original permit application listed only Bronx-Lebanon as the owner and operator of the facility, Metro New York Health Waste Processing, Inc. was always in the picture as Bronx-Lebanon's design and construction consultant. In late 1991, during construction, Bronx-Lebanon notified DEC that Metro would also be operating the facility through its subcontractor Montenay Bronx, Inc. DEC directed that the application be revised to also list Metro as an operator and the permit was revised accordingly.

At the same time, Metro added its name on the permit application to that of Bronx-Lebanon as an owner, but revised its agreement with Bronx-Lebanon to designate Bronx-Lebanon as the responsible party for complying with the mandated operational standards. According to DEC all of this was done

to "enable DEC to hold all parties materially involved in the operation of the facility accountable for compliance as permittees, if enforcement action were necessary." Thus, the application for a DEC permit to operate now provides that both Bronx-Lebanon and Metro are owners of the facility and that Bronx-Lebanon, Metro and Montenay Bronx, Inc. are the operators of the facility.

In accordance with the terms of the permit to construct, DEC, by letter dated June 26, 1992, authorized Bronx-Lebanon to begin the 18-week start-up and shakedown period. Petitioners commenced this CPLR article 78 proceeding on July 22, 1992, seeking to enjoin the shakedown operations and challenging the construction permit on the ground, *inter alia,* that Metro was not a hospital, yet was listed on the permit as an owner and operator in violation of the Administrative Code. The State and City respondents moved to dismiss on Statute of Limitations grounds and for failure to state a cause of action. The IAS Court denied respondents' motions, ordered a trial on whether the start-up and shakedown period was properly authorized and whether respondents abused their discretion in considering if such a facility will endanger the community, and granted petitioners a temporary restraining order, which was stayed by this appeal (CPLR 5519 [a] [1]). Insofar as the temporary restraining order is concerned, the parties agree that such portion of the appeal is now moot inasmuch as the start-up and shakedown period and the stack testing for the incinerator have now been completed.

Contrary to the holding of the IAS Court that the four-month Statute of Limitations (CPLR 217) began to run from the time the revised application was accepted on some unspecified date in June 1992, the period of limitations began to run when the construction permit was issued in October 1989. Indeed, another article 78 proceeding, *Riverdale Comm. for Clean Air v Appleton* (Bronx County Index No. 20112/91), in which the petitioners were represented by present counsel for petitioners, unsuccessfully challenged the issuance of the construction permit (judgment [Stuart C. Cohen, J.] entered on or about June 15, 1992).

The so-called "revised application" presently challenged was actually a revision of the 1989 construction permit, a procedure apparently employed regularly by regulatory agencies to get everyone within the net of liability who will exercise any operational control or have any ownership interest. This did not make the original final action, i.e., the issuance of the

construction permit, any less final. Such permit, insofar as its terms and conditions are concerned, was finalized in 1989.

While, arguably, petitioners might not be time barred if they merely wanted to challenge the addition of a name, they cannot use this proceeding as a device to bring up for review the entire permit process, for which the time to challenge has lapsed *(Matter of Villella v Department of Transp.,* 142 AD2d 46, 49, *lv denied* 74 NY2d 602; *Matter of Westage Dev. Group v White,* 149 AD2d 790, 791, *lv denied* 74 NY2d 609; *see generally, Matter of Save the Pine Bush v City of Albany,* 117 AD2d 267, 269, *mod on other grounds* 70 NY2d 193, 203). This was the result reached in *Riverdale Comm. for Clean Air v Appleton (supra).* Since the shakedown at issue was central to the original decision, but was to be implemented later upon fulfillment of certain contingencies, any complaints regarding the shakedown operation, as distinct from the operating permit itself, are governed by the first four-month period *(Matter of Palmer v New York State Dept. of Envtl. Conservation,* 132 AD2d 996).

To the extent that petitioners seek to forestall full-scale operation of the incinerator, which would require and be subject to an operating permit, inasmuch as none has yet been issued, the matter is not ripe for review *(Church of St. Paul & St. Andrew v Barwick,* 67 NY2d 510, 525, *cert denied* 479 US 985).

Hence, the SEQRA review and the City's permit process are presently beyond review in this proceeding. Even if reviewable, however, petitioners' claims would still have to be rejected. The record clearly supports the conclusion that the regulatory agencies took the requisite "hard look" under *Matter of Jackson v New York State Urban Dev. Corp.* (67 NY2d 400, 416-417). The IAS Court, in ordering a de novo fact finding, expanded well beyond its jurisdiction to review such administrative determinations *(Coalition for Responsible Planning v Koch,* 148 AD2d 230, 233-234, *lv denied* 75 NY2d 704).

Accordingly, the judgment of the Supreme Court, Bronx County (Howard R. Silver, J.), entered on or about August 31, 1992, which denied respondents' motions to dismiss the petition which had challenged their issuance of a permit to Bronx-Lebanon Hospital Center and its operational consultant, Metro New York Health Waste Processing, Inc., for construction of a medical waste incinerator, and temporarily restrained respondents from commencing testing operations in

conformity with the permit, should be reversed, on the law, the motions granted and the petition dismissed as barred by CPLR 217, without costs.

SULLIVAN, J. P., WALLACH and KASSAL, JJ., concur.

Judgment of the Supreme Court, Bronx County, entered on or about August 31, 1992, which denied respondents' motions to dismiss the petition which had challenged their issuance of a permit to Bronx-Lebanon Hospital Center and its operational consultant, Metro New York Health Waste Processing, Inc., for construction of a medical waste incinerator, and temporarily restrained respondents from commencing testing operations in conformity with the permit, is reversed, on the law, the motions granted and the petition dismissed as barred by CPLR 217, without costs.