[632 NYS2d 876]

In the Matter of DUDLEY ROAD ASSOCIATION et al., Appellants, v ADIRONDACK PARK AGENCY et al., Respondents. (Proceeding No. 1.)

In the Matter of DUDLEY ROAD ASSOCIATION et al., Petitioners, v ADIRONDACK PARK AGENCY et al., Respondents. (Proceeding No. 2.)

Third Department, October 26, 1995

### APPEARANCES OF COUNSEL

*Lewis B. Oliver, Jr.,* Albany, for appellants.

*Dennis C. Vacco, Attorney-General,* Albany *(Lawrence A. Rappoport* of counsel), for Adirondack Park Agency, respondent.

*Erwin H. Barber,* Westport, respondent *pro se.*

### OPINION OF THE COURT

SPAIN, J.

In 1990 respondents Erwin Barber and the Barber Homestead Trust (hereinafter collectively referred to as the applicants) applied to the Adirondack Park Agency (hereinafter APA) for a permit to develop a 51-site recreational vehicle campground (hereinafter the project) on approximately 14 acres of a 91.6-acre parcel of property located in the Town of Westport, Essex County, along the westerly shore of Lake Champlain. The property is situated in an area classified as "rural use" on the Official Adirondack Park Land Use and Development Plan Map. APA thereafter solicited and received comments from the public regarding the project, including petitioners, who are persons and entities with an interest in property in the Town of Westport. Because of the historic significance of the property and the surrounding area, APA also requested comment from the State Office of Parks, Recreation and Historic Preservation (hereinafter Historic Preservation), which informed APA that the project would have an adverse impact upon historical sites located in the vicinity and recommended that the applicants work with APA to reduce the project's adverse impact.

A public hearing was held which consisted of eight days of testimony; additionally, APA received submissions and exhibits consisting of approximately 900 pages of documents. After closing and reviewing the record, APA staff prepared a draft order recommending disapproval of the project citing its adverse impact upon, *inter alia,* the historic sites; the draft disapproval order also identified an alternative design which could satisfy the staff's concerns. In response to a request from APA, Historic Preservation suggested several modifications which would mitigate the project's adverse impact. Thereafter, the applicants submitted a revised plan in an attempt to comply with the suggestions made by the APA staff and Historic Preservation. APA subsequently submitted the applicants' revised plan to Historic Preservation together with an additional set of conditions which would have to be met prior to APA issuing a permit. Historic Preservation then informed

APA that these submissions constituted "a feasible and prudent project design alternative that mitigates the adverse impact" of the project and issued a proposed letter of resolution setting forth a number of additional conditions which would have to be satisfied in order for the project to obtain Historic Preservation's final approval. APA then sought to include the revised plan and Historic Preservation's proposed letter of resolution in the hearing record. Petitioners objected to reopening the original record, asserting that the revised plan should be regarded as a new application which should be subjected to another round of public hearings.

On June 11, 1993 APA, without further hearings, issued an order which supplemented the original record with the applicants' revised plan, together with the relevant correspondence with Historic Preservation, and granted conceptual approval to the project on the condition that the applicants incorporate additional modifications into their plans prior to being issued a permit. The applicants thereafter submitted a series of revisions to the project plans which ultimately received final approval from Historic Preservation, and a permit was issued to applicants on October 19, 1993 which allows the construction of the campground.

On September 10, 1993, prior to the issuance of the permit, petitioners commenced a CPLR article 78 proceeding (hereinafter proceeding No. 1) which, *inter alia*, challenged the APA's June 11, 1993 conceptual approval; respondents then moved to, *inter alia*, dismiss the petition as premature. After the permit was issued, petitioners, joined by Camp Dudley YMCA Inc., commenced a second CPLR article 78 proceeding seeking, *inter alia*, a judgment declaring both the June 11, 1993 conceptual approval and the October 19, 1993 permit to be null and void, and seeking a preliminary injunction enjoining the construction of the project. Respondents' answer in proceeding No. 2 included, *inter alia*, a request for an order transferring proceeding No. 2 to this Court based upon petitioners' assertion that the determinations of APA were not supported by substantial evidence. Supreme Court dismissed the petition in proceeding No. 1 as being both premature and moot in light of APA's issuance of a final permit, denied petitioners' request for a preliminary injunction and transferred proceeding No. 2 to this Court. Petitioners appeal.

■ Initially, we conclude that Supreme Court properly determined that the issues raised in proceeding No. 1 regarding the propriety of APA's June 11, 1993 conceptual approval of the project were not ripe for review (*see, Ferrer v Appleton,* 190 AD2d 146, 150, *lv denied* 82 NY2d 662). However, insofar as the petitions in proceedings Nos. 1 and 2 were duplicative,

the filing of the petition in proceeding No. 2, not the granting of the permit to applicants, constituted the event which rendered the petition in proceeding No. 1 moot.

█ We further conclude that APA's departure from the procedures set forth in the Executive Law and relevant regulations in granting conceptual approval to the project does not warrant vacating its final determination. Executive Law § 809 (13) (d) authorizes APA to, *inter alia,* "allow, upon request of a project sponsor, projects to be reviewed conceptually * * * to be divided into and reviewed by sections, and to grant or deny permits for such sections" (9 NYCRR 572.3). The regulations which apply to APA indicate that conceptual review should be sought by a project sponsor "[p]rior to applying for a permit" from APA (9 NYCRR 572.2 [a]). The record reflects that the applicants never formally requested conceptual review of the project, which is not a sectional plan, and that APA's conceptual approval of the project was granted subsequent to the applicants' application. However, it is well settled that an agency's failure to follow procedural provisions that are merely directory rather than mandatory in nature will not warrant annulling a subsequent determination unless the challengers show that substantial prejudice resulted from the agency's noncompliance *(see, Matter of Syquia v Board of Educ.,* 80 NY2d 531, 535-536; *Matter of Sarkisian Bros. v State Div. of Human Rights,* 48 NY2d 816; *see, also, Matter of Harris & Assocs. v deLeon,* 84 NY2d 698, 703).

The determination as to whether statutory procedural provisions are either directory or mandatory requires an analysis of the statute and the legislative intent *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 171; *see also, Matter of Syquia v Board of Educ., supra,* at 536). The statutory language of Executive Law § 804 (9), which authorizes APA "to do any and all things necessary or convenient to carry out the purposes and policies of this article" and the additional language of Executive Law § 809 (13) (d), which provides that APA can make conceptual determinations "as the agency deems reasonable and necessary", demonstrates the legislative intent that the various procedural provisions included in that statute be considered merely directory in nature. Further, petitioners have failed to establish that any substantial prejudice has resulted from APA's conceptual approval of the project which eventually led to its issuance of the October 19, 1993 permit, especially in light of the extensive record which existed as of the date of the conceptual approval of the project on June 11, 1993, the involvement from the beginning of Historic Preservation as a gatekeeper regarding historical issues, and the many opportunities for involvement, input and comment afforded to petitioners by APA throughout the entire process.

■ Petitioners' assertion that the applicants' revisions to their original plan required a second public hearing is without merit. APA is not required to hold a public hearing on every application it receives *(see,* Executive Law § 809 [3] [d]; 9 NYCRR 580.2). An eight-day public hearing was held in this case at which substantial testimony, documentary submissions and many exhibits were received and considered; that evidence not only details all aspects of the adverse impact of the proposed project but also includes numerous suggestions from, among others, Historic Preservation as to how the project could be modified so as to minimize its adverse impact. The record also adequately reflects the spectrum of public concern with respect to all aspects of the project, especially the impact of the project on the historic integrity of the property and its surrounding area, so as to render redundant any further hearings in this regard *(see, Matter of Concerned Citizens Against Crossgates v Flacke,* 89 AD2d 759, 760, *affd* 58 NY2d 919). APA's refusal to hold new hearings was reasonable under the circumstances *(see, supra,* at 760-761; *Bolton v Adirondack Park Agency,* 128 Misc 2d 59, 68-69).

■ Petitioners' contention that APA's final approval of a permit for the project violated the State Environmental Quality Review Act (ECL art 8; hereinafter SEQRA) is also unavailing. The record clearly supports the conclusion that APA complied with the SEQRA guidelines (ECL 8-0109 [1]) by appropriately considering a reasonable range of alternatives to the project, which resulted in APA's requiring the applicants to repeatedly revise the project prior to its final approval *(see, Matter of Town of Dryden v Tompkins County Bd. of Representatives,* 78 NY2d 331, 333-334). Furthermore, the various comments received by APA also provide sufficient basis in the record regarding the social, economic and other important considerations to enable the agency to take the required " 'hard look' " *(Matter of Morse v Town of Gardiner Planning Bd.,* 164 AD2d 336, 340). It is noteworthy that, despite petitioners' assertion to the contrary, an environmental impact statement was not required *(see,* ECL 8-0111 [5] [c]).

■ Also without merit is petitioners' argument that APA failed to undertake an over-all intensity analysis pursuant to Executive Law § 809 (10) (c). A careful review of the prefiled testimony of APA's Supervising Review Specialist and the language of the final permit clearly shows that the agency considered the project's expected impact on the over-all intensity of development prior to its approval of the application. Additionally, with respect to the impact of recreational vehicles which are greater than 35 feet in length, APA's treat-

ment of vehicles more than 35 feet in length as "principal buildings" within the meaning of Executive Law § 805 (3) (f) (3) is rational. The final permit states that only eight vehicles exceeding 35 feet in length will be permitted at the site at the same time; considering that two permanent buildings are to be constructed, no more than 10 principal buildings would be at the site at any given time. Because applicants' entire parcel is 91.6 acres (see, Executive Law § 809 [10] [c]), the project is in compliance with the intensity guideline of not more than 75 principal buildings per square mile (Executive Law § 805 [3] [f] [3]). Furthermore, APA's treatment of the project as a class B regional project instead of a class A regional project is of no consequence under the circumstances of this case since the Town of Westport has not established an APA-approved local land use program (see, Executive Law § 809 [1]; 9 NYCRR 573.1; Matter of Hunt Bros. v Glennon, 180 AD2d 157, 160, revd on other grounds 81 NY2d 906). We have considered all other contentions raised by petitioners and find them to be without merit.

■ We conclude that APA's decision to grant conceptual approval to the project was rational and supported by substantial evidence. In granting conceptual approval to the project, the APA conditioned final approval upon a number of revisions imposed upon the applicants which included, inter alia, shifting the location of the project site, reducing its size and screening all structures by supplementing the area's existing foliage. A review of the entire record demonstrates that the project's potential adverse impact would be minimized through the implementation of these measures (cf., Matter of Lake George Assn. v Lake George Park Commn., 213 AD2d 867, 869).

We further conclude that APA's decision to grant the final permit is also supported by substantial evidence. The record amply demonstrates that the applicants' implementation of the revisions suggested by Historic Preservation and mandated by APA in its conceptual approval provided APA with a rational basis to determine that the adverse impact of the project had been sufficiently mitigated (cf., supra, at 869).

CARDONA, P. J., WHITE, CASEY and PETERS, JJ., concur.

Ordered that the judgment is affirmed, without costs.

Adjudged that the determination is confirmed, without costs.