■ In the Matter of JODI L. KUREY, Appellant, v NEW YORK STATE SCHOOL FOR THE DEAF et al., Respondents. [642 NYS2d 415] —Peters, J. Appeal from a judgment of the Supreme Court (Teresi, J.), entered February 3, 1995 in Albany County, which, *inter alia*, dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondents terminating petitioner's probationary employment.

On September 8, 1992, petitioner was hired, on a probationary basis, by respondent New York State School for the Deaf (hereinafter the school) as an instructor. Pursuant to her job description, she was required to "[u]nderstand the 'Master Teacher' concept[1] and possess the ability to develop a team approach within the program".

Personnel procedures and conditions of employment of the Commissioner of Education provide that each probationary employee hired by the school "shall be subject to two performance ratings annually by at least two staff members in supervisory positions. * * * The first rating each school year shall occur on or about January 15 [and] * * * the second rat-

1. The "master teacher" concept required petitioner, *inter alia*, to take steps to insure that the needs and goals of her students were communicated to staff members providing direct student services (known as the "mini-team"), as well as to a larger team of resource professionals which included the high school principal, psychologist, dormitory supervisor, dean of students and high school supervisor.

ing * * * no later than June 15" (Commissioner's Rules § 862.1 [c]).[2] The rules further provide, *inter alia*, that at any time during the three-year probationary period, such employee may be terminated without cause provided that he or she was first observed by supervisory personnel, offered supervisory assistance, if needed, and "given the opportunity to satisfactorily meet standards of performance or conduct * * * [and failed] to positively respond to these procedures" (Commissioner's Rules § 862.1 [b] [1]).

During the 1992-1993 school year, petitioner's classroom performance was observed on four occasions by either Dana Chapman, petitioner's immediate supervisor, or James McNamara, the school principal, whereby she received "satisfactory" performance ratings. Petitioner also received a "performance evaluation review" dated March 26, 1993, signed by both Chapman and McNamara, which again rated her overall performance as "satisfactory".

During the 1993-1994 school year, petitioner's classroom performance was observed on two occasions, once by McNamara and the other by Chapman, who again rated her performance as "satisfactory". On March 24, 1994, petitioner was provided with a "performance evaluation review" signed by Chapman and McNamara, which now indicated a "needs improvement" rating. Therein, it noted that while petitioner's work with her students was acceptable, she needed to improve her communication and relationship with team professionals to appropriately fulfill the "master teacher" role. Although petitioner signed the evaluation, she later sent a memorandum to Chapman in which she challenged the rating and requested a new evaluation. Chapman denied petitioner's request but offered her supervisory assistance.

On June 27, 1994, after seeing no improvement in petitioner's performance, respondent Philip E. Cronlund, the school superintendent, advised her that she would not be offered employment for the 1994-1995 school year. Upon request for a written statement substantiating the termination, Cronlund noted that due to petitioner's disagreement with the school's assessment of her job performance, there were "irreconcilable differences and an incompatibility that are deleterious to the future effectiveness of the program".

Petitioner thereafter commenced this CPLR article 78 proceeding challenging her probationary termination due to

---

**2.** These internal rules concerning State schools are not subject to the requirements of the State Administrative Procedure Act (*see*, State Administrative Procedure Act § 102 [2] [b] [i]).

respondents' failure to follow the rules of the Commissioner. After answer and objection that petitioner failed to exhaust her administrative remedies, Supreme Court denied her petition for reinstatement and found, after dismissal on the merits, that petitioner also failed to exhaust her administrative remedies. Petitioner now appeals.

Pursuant to the Commissioner's Rules, respondents had broad discretion to terminate petitioner during her probationary period at any time, without stated cause (*see*, Commissioner's Rules § 862.1 [b] [1]; *see generally, Matter of Tucker v Board of Educ.*, 82 NY2d 274; *Matter of Biegel v Board of Educ.*, 211 AD2d 969), so long as petitioner's conduct and performance was observed by supervisory personnel and, after the offer of appropriate assistance, she failed to satisfactorily meet the standards of performance or conduct (*see*, Commissioner's Rules § 862.1 [b] [1]). In light of the allegations here raised, our review is limited to whether the determination was made in bad faith or was arbitrary and capricious (*see, Matter of Talamo v Murphy*, 38 NY2d 637). Upon our review, we find no basis to disturb the determination.

Addressing first petitioner's contention that respondents failed to provide her with an opportunity to meet the standards of performance (*see*, Commissioner's Rules § 862.1 [b]), we find no merit. The record clearly shows that petitioner was advised, during her initial employment interview, that she would be required to fulfill, understand and implement the "master teacher" concept. During the 1992-1993 school year, petitioner, along with other personnel, received special training on working with teams, professionals and paraprofessionals, and Chapman personally encouraged petitioner to meet with him on a weekly basis to "identify resources and provide assistance in the performance of job duties". During the 1993-1994 school year, Chapman specifically told petitioner, on several occasions, that she needed to increase her communication skills to fulfill the "master teacher" role. Chapman noted that petitioner appeared to be frustrated and unhappy when forced to develop such needed skills and had, in fact, requested that her position be redesigned to delete such responsibilities.

After the March 24, 1994 "performance evaluation review", Chapman again renewed his offer to assist petitioner on a weekly basis in the improvement of her performance. Although petitioner scheduled several meetings, she failed to consistently accept the assistance offered. Chapman continued in his offers of assistance by registering petitioner in a May 1994 professional seminar. Nonetheless, when no improvement was

made in the specific areas noted in the March 24, 1994 evaluation, petitioner was terminated on June 27, 1994. We find it clear that respondents took adequate steps to provide petitioner with the opportunity to satisfactorily meet the standards of performance, as required, both prior to and subsequent to the March 24, 1994 evaluation.

Addressing next petitioner's contention that respondents failed to abide by the Commissioner's Rules since she never received the requisite performance ratings during each school year (*see*, Commissioner's Rules § 862.1 [c]), again we find no merit. During the 1992-1993 school year, petitioner received four written "report[s] of observation" and one "performance evaluation review" and had, during the 1993-1994 school year, received two written "report[s] of observation" and one "performance evaluation review". Contrary to petitioner's contention, Roswitz Apkarian, Assistant Director for Employee Relations for the Office of Human Resource Management Services of the Education Department, averred that the rule simply requires that two different supervisors rate the probationer's performance over a one-year period. Since it is undisputed that petitioner was so rated during the term of her employment and that respondents' interpretation of such rule is not arbitrary or capricious, we will not disturb the determination. Petitioner's attempt to distinguish the "performance evaluation review" from the "report of observation" finds no support in the record.

We further find respondents to have substantially complied with the dates detailed in the Commissioner's Rules for completion of annual evaluations (*see*, Commissioner's Rules § 862.1 [c]) since such dates are "directory" rather than "mandatory" (*see*, McKinney's Cons Laws of NY, Book 1, Statutes § 172; *see also*, *Matter of Syquia v Board of Educ.*, 80 NY2d 531, 535-536; *Matter of Dudley Rd. Assn. v Adirondack Park Agency*, 214 AD2d 274, 279). In failing to show that substantial prejudice resulted from the one-month delay in receiving her first evaluation for the 1993-1994 school year (*see*, *Matter of Syquia v Board of Educ.*, supra; *Matter of Dudley Rd. Assn. v Adirondack Park Agency*, supra), we find no basis to disturb the determination rendered.

Finally, while we agree with Supreme Court that petitioner failed to exhaust her administrative remedies with respect to her claim that respondents failed to comply with the procedural framework for evaluations prior to her termination, we find that since the court did, in fact, review the petition on the merits as to the alleged arbitrary termination of employ-

ment—an issue not properly grievable—we affirm the judgment of Supreme Court after reviewing and rejecting all other issues raised by petitioner.

Cardona, P. J., White, Casey and Spain, JJ., concur. Ordered that the judgment is affirmed, without costs.