In the Matter of HUNT BROTHERS, INC., Respondent, v ROBERT C. GLENNON, as Executive Director of Adirondack Park Agency, et al., Appellants.

Third Department, June 4, 1992

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Joan Leary Matthews* of counsel), for appellants.

*Lustberg & Ferretti (Robert M. Lustberg* of counsel), for respondent.

*William H. Kissel* for Empire State Concrete & Aggregate Producers Association Inc. and another, *amici curiae.*

*John W. Caffry* for Residents Against Gravel Extraction, *amicus curiae.*

## OPINION OF THE COURT

CASEY, J.

At issue on this appeal is whether respondent Adirondack Park Agency (hereinafter APA) has jurisdiction to approve, approve with conditions, or disapprove an extractive mining operation in the Adirondack Park which has obtained a permit from respondent Department of Environmental Conservation (hereinafter DEC) pursuant to the New York State Mined Land Reclamation Law (ECL art 23, tit 27) (hereinafter MLRL). We hold that APA does not have jurisdiction over such operations.

When petitioner sought to reopen its dormant sand and gravel mine in the Town of Hope, Hamilton County, in 1985, APA concluded that it lacked jurisdiction because the sand and gravel mining operation predated the enactment of the APA Act (Executive Law art 27). In 1988, DEC issued a permit authorizing sand and gravel mining on six acres of petitioner's land. At petitioner's request, the permit was modified in 1989 to allow the blasting of hard rock reserves located on a one-acre portion of the site.

In response to complaints by neighboring residents concerning petitioner's use of explosives at the site, APA conducted an investigation and concluded that petitioner had expanded its mining activities by engaging in the· extraction of hard rock. According to APA, this expansion or change in the mining activities subjected petitioner's operation to the requirements of the APA Act, including the permit requirements of Executive Law § 809. Petitioner initially participated in APA's permit review process, but after asking APA for a declaratory ruling regarding the basis for its jurisdiction, petitioner commenced this combined CPLR article 78 proceeding and declaratory judgment action seeking, *inter alia,* a declaration that APA lacks jurisdiction over any mineral operation governed by the MLRL. Supreme Court declared that APA lacks jurisdiction over mining activities in the Adirondack Park in general and petitioner's operation in particular, resulting in this appeal by respondents.

Supreme Court declared that APA lacks jurisdiction over mining activities in the Adirondack Park in general because the APA Act is not a local zoning ordinance or local law and that APA lacks jurisdiction over petitioner's particular mining operation because it is a preexisting use. We agree that APA lacks jurisdiction to regulate mining activities within the Adirondack Park, including petitioner's operation, but not for the reasons adopted by Supreme Court.

The MLRL contains an express supersession clause which, at the time this proceeding arose, provided that: "For the purposes stated herein, this title shall supersede all other state and local laws relating to the extractive mining industry; provided, however, that nothing in this title shall be construed to prevent any local government from enacting local zoning ordinances or other local laws which impose stricter mined land reclamation standards or requirements than those found herein" (ECL 23-2703 [former (2)], as amended by L 1976, ch 477, § 1). The proviso in ECL 23-2703 (former [2]) is limited to local laws relating to the control of the aftereffects of mining *(see, Matter of Northeast Mines v State of New York Dept. of Envtl. Conservation,* 113 AD2d 62, 64-65, *appeal dismissed* 67 NY2d 917, *lv denied* 68 NY2d 612) and, therefore, has no application to this case, which relates to the mining operation itself and involves a State law.

In *Matter of Frew Run Gravel Prods. v Town of Carroll* (71 NY2d 126, 129), the Court of Appeals construed the superses-

sion clause of ECL 23-2703 (former [2]) and held that the MLRL was not intended to preempt the provisions of a town zoning law which established a zoning district where a sand and gravel operation is not a permitted use. The rationale for this holding appears to arise out of the theory that the purpose of the zoning ordinance is to regulate land use generally, and although the ordinance "inevitably exerts an incidental control over any of the particular uses or businesses which, like sand and gravel operations, may be allowed in some districts but not in others * * * this incidental control * * * is not the type of regulatory enactment relating to the 'extractive mining industry' which the Legislature could have envisioned as being within the prohibition of * * * ECL 23-2703 [former] (2)" (supra, at 131). There is no reason not to apply this rationale to a State statute which has as its purpose the regulation of land use generally, and the APA Act, which has been described as "comprehensive zoning and planning legislation enacted by the State Legislature to ensure preservation and development of the resources of the Adirondack Park region" (Wambat Realty Corp. v State of New York, 41 NY2d 490, 491), is clearly such a State statute.

Nevertheless, we conclude that the rationale of Matter of Frew Run Gravel Prods. v Town of Carroll (supra) does not save the APA Act from the express supersession clause of the MLRL insofar as the MLRL empowers APA to regulate extractive mining operations by granting, granting with conditions or denying permission to conduct such operations in the Adirondack Park. In contrast to municipal zoning ordinances in general and the zoning ordinance at issue in the Frew Run Gravel case in particular, the APA Act does not seek to regulate land use in the Adirondack Park through traditional zoning concepts by allowing particular uses and businesses in some districts but not in others. Instead, privately owned land is classified into six different land use categories and the APA Act contains lists of compatible uses, classified as either primary or secondary, for the various land use categories (Executive Law § 805 [3]). APA is given jurisdiction to review and approve all "class A regional projects" and certain "class B regional projects" (Executive Law § 809 [1]), both of which are defined in Executive Law § 810. The APA Act provides standards which must be met before a permit can be issued (see, Executive Law § 809 [10]) and APA is authorized to impose conditions on its approval (Executive Law § 809 [13]).

The APA Act provides that commercial sand and gravel

extraction and mineral extractions are compatible uses, either primary or secondary, in all six of the land use categories (Executive Law § 805 [3]). It is this exercise of power to regulate land use generally by dividing a governmental area into categories and establishing compatible uses within the categories which constituted the type of "incidental control" that is not a regulatory enactment relating to the extractive mining industry within the meaning of ECL 23-2703 (former [2]) *(see, Matter of Frew Run Gravel Prods. v Town of Carroll, supra,* at 131). The provisions of the APA Act, however, which empower APA to approve, approve with conditions or disapprove class A or class B regional projects involving commercial sand and gravel extraction and mineral extraction, go well beyond the "incidental control" of a zoning law which prohibits such uses in particular districts and constitute an express limitation of the mining activities *(see, Hawkins v Town of Preble,* 145 AD2d 775, 776). APA's approval process clearly relates to the mining extraction operation itself and not merely to land use in general *(see, Matter of Hoffay v Tifft,* 164 AD2d 94, 98).

Further evidence that the APA Act is a State law "relating to the extractive mining industry" within the meaning of ECL 23-2703 (former [2]) can be found in the provisions of the APA Act which create the industrial use area category *(see,* Executive Law § 805 [3] [h]). The stated purposes, policies and objectives of such areas are to "encourage the continued operation of major existing industrial and *mineral extraction* uses important to the economy of the Adirondack region and will provide suitable locations for new industrial and *mineral extraction* activities that may contribute to the economic growth of the park without detracting from its character" (Executive Law § 805 [3] [h] [2] [emphasis supplied]). Although petitioner's operation is apparently not located in an industrial use area, these purposes, policies and objectives establish that the APA Act is aimed at more than general land use regulation. A statute which has as a stated purpose, policy and objective the encouragement of mineral extraction activities to promote economic growth compatible with environmental concerns is clearly a statute "relating to the extractive mining industry" within the meaning of ECL 23-2703 (former [2]), for that is one of the stated purposes of the MLRL itself (ECL 23-2703 [1]).

Based upon our reading of the APA Act as a whole, we conclude that although the APA Act has been described as

comprehensive zoning and land use legislation, its provisions which authorize APA to approve, approve with conditions or disapprove extractive mining operations in the Adirondack Park transcend the typical zoning provisions, which permit such operations in some areas but not others and have only an "incidental control" over those operations. The approval process requires APA to examine the proposed mining extraction process itself to determine whether it meets the statutory criteria for approval (see, Executive Law § 809 [10]) and APA can impose conditions which affect the mining extraction process (see, Executive Law § 809 [13]). APA's exercise of authority in the approval process would frustrate the purpose of the MLRL to encourage mining through standardization of regulations pertaining to mining operations (see, Matter of Frew Run Gravel Prods. v Town of Carroll, 71 NY2d 126, 133, supra). We conclude, therefore, that the APA Act includes a regulatory scheme relating to the extractive mining industry which is superseded by the express provisions of the MLRL (see, ECL 23-2703 [former (2)]).

Respondents argue that, at a minimum, APA should be permitted to retain jurisdiction over petitioner's operation because this court has recognized that a local government's imposition of certain conditions on an extractive mining operation, such as those relating to use of access roads, noise, dust emissions and other factors related to health and safety outside the boundaries of the operation, might be permissible (see, Matter of Hoffay v Tifft, 164 AD2d 94, 97-98, supra). The conditions that a local government can impose upon a permitted mining operation have been severely limited by a recent amendment to ECL 23-2703 (2) (L 1991, ch 166, § 228), but more importantly, respondents' argument misses the point. The question is not whether the State can enact a statute which imposes some conditions on a mining operation that will not be superseded by the MLRL. The question is whether the regulatory scheme contained in the APA Act relates to the extractive mining industry within the meaning of ECL 23-2703 (former [2]), and for the reasons set forth above we conclude that it does.

As a final matter, we note that although petitioner's sand and gravel mine predated the enactment of the APA Act, APA determined that it had jurisdiction because petitioner's mining activities had expanded from the preexisting sand and gravel mine into a mining operation which involved a hard rock quarry in addition to the sand and gravel mine. Supreme

Court found that no change in the mining operation had occurred, which served as a basis for the court's conclusion that APA lacked jurisdiction over petitioner's operation. We conclude that there is a rational basis in the record for APA's determination on this issue, but we note that the determination lends further support to our conclusion that the APA Act regulates mining activity and not just land use in general. APA's determination to assert jurisdiction was not based upon a change in land use, which was and is an extractive mining operation. Rather, APA focused on the change in petitioner's mining activity. For example, in their reply brief, respondents argue that even if petitioner were correct in its claim that the only change was its use of blasting, such a change would provide a rational basis for APA's determination to assert jurisdiction because "the fact that blasting is now being employed * * * is a clear indication that [petitioner's] *mining activity* has changed" (emphasis supplied).

Accordingly, the judgment should be modified to declare that APA lacks jurisdiction to approve, approve with conditions or disapprove petitioner's mining operation because of the supersession clause contained in ECL 23-2703 (former [2]).

WEISS, P. J. (dissenting). I respectfully dissent. This case involves a conflict between two statutes each enacted by the Legislature to preserve and protect very important assets of the State. In 1971 the Legislature determined the Adirondack Park to be a unique natural resource requiring optimum over-all conservation, protection and preservation. In order to provide a comprehensive land use and development plan which would be sensitive to the preservation of the natural resources and yet still be cognizant of local, regional and State economic concerns, respondent Adirondack Park Agency (hereinafter APA) was created (L 1971, ch 706) virtually as a mega zoning board to administer and enforce a master plan for the Adirondack Park (Executive Law art 27) (hereinafter the APA Act).

In 1974 the Legislature declared that the policy of this State is to foster and encourage the development of an economically sound and stable mining and minerals industry, as well as to provide for the wise and efficient use of the resources available for mining and for the orderly reclamation of all mined lands (ECL 23-2703 [1]). To achieve these objectives, the New York State Mined Land Reclamation Law (ECL art 23, tit 27) (hereinafter MLRL) was enacted (L 1974, ch 1043) and pro-

vided, in pertinent part, that "[f]or the purposes stated herein, this title *shall supersede all other state and local laws relating to the extractive mining industry"* (ECL 23-2703 [former (2)] [emphasis supplied]).

In what appears to be a case of first impression, this court has been called upon to determine whether the Legislature intended ECL 23-2703 (former [2]) to supersede the powers vested in APA to regulate and control land use within the Adirondack Park where the proposed use of land is to conduct mineral extraction and mining. The issue has already been answered affirmatively with respect to local governments and local laws by the Court of Appeals, which held that local zoning ordinances do not relate to the extractive mining industry but rather to an entirely different subject matter and purpose, i.e., regulating the location, construction and use of land *(see, Matter of Frew Run Gravel Prods. v Town of Carroll,* 71 NY2d 126, 131). In so holding, the court recognized that local regulations which indeed deal with the actual operation and process of mining would frustrate the statutory purposes of the MLRL and are superseded by ECL 23-2703 (former [2]) *(supra,* at 133). Similar results occurred in *Matter of Hoffay v Tifft* (164 AD2d 94), *Seaboard Contr. & Material v Town of Smithtown* (147 AD2d 4, *appeal dismissed* 74 NY2d 892, *lv denied* 75 NY2d 707), *Hawkins v Town of Preble* (145 AD2d 775) and *Matter of Voorheesville Sand & Stone Co. v Town of New Scotland* (136 AD2d 849).

I cannot agree with the majority, which has held that the APA Act seeks to regulate mining operations. Despite the information sought and questions asked by APA, its concerns here are clearly not with the details of the mining operation per se but, much more significantly, with the impact of the mining activity beyond the site and the effects of mining upon the surrounding park region *(see, Seaboard Contr. & Material v Town of Smithtown, supra,* at 8). Given the basic purpose of the APA Act expressed explicitly by the Legislature to "insure optimum overall conservation, protection, preservation, development and use of the unique scenic, aesthetic, wildlife, recreational, open space, historic, ecological and natural resources of the Adirondack park" (Executive Law § 801), I conclude that the APA Act is not a law relating to the extractive mining industry which has been superseded by the MLRL. Moreover, APA serves a supervening State concern which transcends parochial or local interests and is possessed

with formidable powers to carry out its mandated tasks of protecting and preserving the Adirondack Park from despoliation, exploitation and destruction by a contemporary generation in disregard of generations yet to come *(Matter of Long v Adirondack Park Agency,* 76 NY2d 416; *Wambat Realty Corp. v State of New York,* 41 NY2d 490).

In *Matter of Frew Run Gravel Prods. v Town of Carroll* (71 NY2d 126, *supra),* the Court of Appeals limited the interpretation of ECL 23-2703 (former [2]) to superseding any "legislation which purports to control or regulate extractive mining *operations" (supra,* at 134; emphasis supplied), which was apparently defined as "pertaining to actual mining activities" *(supra,* at 133). The Court of Appeals harmonized ECL former 23-2703 (former [2]) with the power of towns to regulate land use through zoning *(supra,* at 134). While the majority correctly observes that the APA Act does not regulate land use through traditional concepts, it remains a land use statute. Within this land use and planning authority, APA can indeed control the siting of mines. The granting, granting with conditions or denying permission to conduct mining operations does not regulate either mining operations or actual mining activities unless APA has attached a condition which in fact regulates mining activities, a situation which does not here exist. Concededly, the potential to regulate mining operations through imposing conditions has been superseded by the MLRL. That supersession, however, does not void APA mine siting power or preclude APA from considering the potential impact and effect of a mine on the surrounding neighborhood and the Adirondack Park when determining if a permit should be granted.

Accordingly, I would reverse Supreme Court's judgment and remit the matter to respondents for further proceedings.

CREW III, HARVEY and MAHONEY, JJ., concur with CASEY, J.; WEISS, P. J., dissents in a separate opinion.

Ordered that the judgment is modified, on the law, without costs, by deleting from the decretal paragraph clauses a and b and substituting therefor a provision declaring that the Adirondack Park Agency lacks jurisdiction to approve, approve with conditions or disapprove petitioner's mining operation because of the supersession clause of ECL 23-2703 (former [2]), and, as so modified, affirmed.