[599 NYS2d 335]

In the Matter of ALFRED SCHADOW, Doing Business as SCHADOW EXCAVATION, Respondent, v HAROLD WILSON et al., Constituting the Town of Ballston Zoning Board of Appeals, Appellants.

Third Department, July 1, 1993

APPEARANCES OF COUNSEL

*David W. Little,* Burnt Hills, for appellants.

*Desmond & Holsberger,* Scotia *(John L. Desmond* of counsel), for respondent.

## OPINION OF THE COURT

CASEY, J.

Pursuant to the Town of Ballston Zoning Law, soil mining is designated as a permissible use and may be allowed by special use permit granted by respondents. To be entitled to a special use permit, the applicant must meet the four standards or guidelines set forth in Town of Ballston Zoning Law § 26.3. Petitioner, as lessee of certain property located on Goode Street in the Town of Ballston, Saratoga County, applied to the Department of Environmental Conservation (hereinafter DEC) pursuant to ECL article 23 for a permit to operate a sand and gravel mining operation on the property *(see,* ECL 23-2711) and also applied to respondents for a special use permit. DEC apparently granted petitioner a permit, but respondents determined that the standards for the issuance of a special use permit had not been met and, therefore, denied

petitioner's application. Petitioner then commenced this CPLR article 78 proceeding, arguing that respondents' authority to deny a special use permit for a mining operation had been preempted by ECL article 23 or, in the alternative, that respondents' determination was arbitrary and capricious. Supreme Court agreed with petitioner's preemption argument and annulled respondents' determination, resulting in this appeal by respondents.

As originally enacted, the State's Mined Land Reclamation Law (ECL art 23, tit 27) included an express supersession clause, which provided that the provisions of the Mined Land Reclamation Law "shall supersede all other state and local laws relating to the extractive mining industry" (ECL 23-2703 [former (2)]). Despite the broad language of the supersession clause, it was construed as inapplicable to the provisions of a local law or ordinance that established a district where a mining operation was not allowed because the purpose of the local law was to regulate land use generally and it exerted only "incidental control" over the extractive mining industry *(Matter of Frew Run Gravel Prods. v Town of Carroll,* 71 NY2d 126, 131).

In *Matter of Hunt Bros. v Glennon* (180 AD2d 157, *revd* 81 NY2d 906), this Court was called upon to determine the applicability of the supersession clause to the provisions of the Adirondack Park Agency (hereinafter APA) Act (Executive Law art 27), which allowed sand and gravel mining operations within the Adirondack Park upon review and approval by the APA. Concluding that the statutory provisions that empower the APA to approve or disapprove mining operations go well beyond the "incidental control" of a zoning law that prohibits such uses in particular districts, we held that the APA approval process related to the extractive mining activity itself and was superseded by ECL 23-2702 (former [2]). The Court of Appeals reversed, concluding that "[i]nasmuch as the APA's mission concerns the broad area of land use planning within the Adirondack Park district, its enabling statute is not a law 'relating to the extractive mining industry' " *(Matter of Hunt Bros. v Glennon,* 81 NY2d 906, 909, *supra).*

■ Similar to the APA Act, the purpose of the Town of Ballston Zoning Law is to regulate land use generally, not to regulate the actual operation of extractive mining in the Town *(see, Matter of Frew Run Gravel Prods. v Town of Carroll, supra).* Just as the APA Act empowers the APA to grant or deny a permit for a mining operation in the Adiron-

dack Park, the ordinance at issue here empowers respondents to grant or deny a special use permit for soil mining in the Town of Ballston. The standards or guidelines specified in the Town of Ballston Zoning Law, which must be considered by respondents on any application for a special use permit in the Town, are no more intrusive on the extractive mining industry than the statutory standards for APA approval of mining operations in the Adirondack Park. We conclude, therefore, that the provisions of the Town of Ballston Zoning Law, which empower respondents to grant or deny a special use permit for a soil mining operation in the Town and prescribe the standards that must be considered by respondents in deciding whether to grant a special use permit, constitute the type of "incidental control" that is not subject to ECL 23-2703 (2).

ECL 23-2703 (2) was amended in 1991 and now expressly permits "local laws or ordinances of general applicability" as long as they do "not regulate mining and/or reclamation activities regulated by state statute, regulation, or permit" (ECL 23-2703 [2] [a]). The ordinance at issue clearly meets this requirement, for it regulates land use generally, i.e., the location of mining operations in the Town, not the mining activity itself. The amended statute also provides that "[w]here mining is designated a permissible use in a zoning district and allowed by special use permit, conditions placed on such special use permits shall be limited to [certain subjects unrelated to the mining activity]" (ECL 23-2703 [2] [b]). Petitioner argues that this latter provision precluded respondents from doing anything other than issuing the special use permit with the limited conditions, but we disagree. By its terms, the provision is only applicable when mining is a permissible use *and* it is allowed by special use permit. Although mining is a permissible use in the Town, respondents decided not to allow it by special use permit. The denial of the special use permit affects only the location of the mining operation, which involves a matter of land use regulation, whereas the imposition of conditions on a special use permit granted for a mining operation affects the mining activity unless the conditions are limited to those permitted by ECL 23-2703 (2) (b).

Having concluded that respondents were not prohibited by ECL 23-2703 (2) from deciding whether to grant or deny petitioner's application for a special use permit based upon the general standards prescribed by the Town of Ballston Zoning Law, we turn to the question of whether respondents'

determination to deny the application was arbitrary and capricious. There is no entitlement to a special use permit, but rather petitioner was required to show that the contemplated use conforms with the standards imposed by the zoning ordinance and then the permit must be granted unless there are reasonable grounds for denying it *(see, Matter of C & A Carbone v Holbrook,* 188 AD2d 599; *see also, Matter of Carrol's Dev. Corp. v Gibson,* 53 NY2d 813, *affg on mem below* 73 AD2d 1050). It is clear from the record that respondents concluded that petitioner had failed to show that the proposed mining operation conformed with any of the four specific standards or guidelines set forth in the zoning ordinance, a conclusion that is supported by the record.

The first guideline requires that the proposed use be in harmony with the appropriate and orderly development of the district and not detrimental to the orderly development of adjacent districts. As one of respondents pointed out at the hearing, the site of the proposed mining operation is rural but it is adjacent to a residential district only 600 feet away. The relevant portion of the tax map reveals that the area along Goode Street has been subdivided into numerous lots, most of which are less than two acres, and one resident stated that numerous children live in the neighborhood. The appearance of 35 to 40 interested persons at a hearing on the issue demonstrates that the area is not sparsely populated. It is clear that respondents' conclusion as to petitioner's failure to show conformance with the first guideline of the zoning ordinance did not reflect merely speculative problems or general objections of area residents, but instead constituted a finding that a mining operation would not be in harmony with the orderly development of the adjacent residential neighborhood, a finding that is supported by the record and should not be disturbed by this Court *(see, Matter of Connors v Sullivan,* 171 AD2d 982, 983).

The second guideline requires that the traffic generated by the use not be hazardous or inconvenient to the neighborhood or conflict with the normal traffic of the neighborhood, a standard that is substantially different than that considered by the DEC in its review of the proposed mining operation. In addition to the vehicular traffic typical for a county road, there is evidence in the record that bikers and walkers use Goode Street on a daily basis. One resident noted that someone had been hauling dirt out of the proposed site for the past two years, requiring her to keep her windows closed and her

asthmatic son indoors. Respondents were amply justified, therefore, in concluding that the truck traffic generated by the mining operation would be inconvenient to the neighborhood and conflict with the normal traffic of the neighborhood.

As to the third guideline, a real estate appraiser expressed his opinion at the hearing that a mining operation could have a very negative effect on property values in the neighborhood, and one resident noted that an old gravel pit along Goode Street had become a haven for teenagers and was often used by hunters to sight their rifles. The fourth guideline requires that the public convenience and welfare be substantially served by the proposed use, and petitioner's failure to make the showing required by the guideline is in and of itself sufficient to provide the necessary rational basis for respondents' denial of petitioner's application *(see, Matter of King Rd. Materials v Garafalo,* 173 AD2d 931, 933). There is no evidence in this record that the public convenience and welfare would be served by a sand and gravel operation at the site proposed by petitioner.

The judgment should, therefore, be reversed and the determination should be confirmed.

MAHONEY, J. (dissenting). I agree with the majority that the State's Mined Land Reclamation Law (ECL art 23, tit 27) was not intended to preempt the provisions of the Town of Ballston Zoning Law that require a special use permit for the conducting of a sand and gravel mining operation within the municipality. In my view, however, respondents' denial of petitioner's application for a special use permit, based as it was upon what I perceive to be general objections, conclusory findings and pure conjecture, lacks a rational basis. Under firmly established precedent, denial of a special use permit upon such intangibles that are unsupported by objective and reliable evidence cannot stand *(see, e.g., Matter of Lee Realty Co. v Village of Spring Val.,* 61 NY2d 892; *Matter of Lee v Zoning Bd. of Appeals,* 122 AD2d 423; *see also, Matter of Pilato v Zoning Bd. of Appeals,* 155 AD2d 864; *Matter of Huntington Health Care Partnership v Zoning Bd. of Appeals,* 131 AD2d 481, *lv denied* 70 NY2d 613; *Matter of Kidd-Kott Constr. Co. v Lillis,* 124 AD2d 996).

Here, the stated rationale underlying respondents' decision is that the proposed mining operations are not in harmony with the neighborhood "as [the mine site] is rural yet adjacent to a residential district", the presence of sand trucks, esti-

mated to number a maximum of 14 per day at peak operations with an average of two per day, "would greatly increase the traffic on Goode Street" and the over-all use would be deleterious to the public welfare because the proposed hedgerows and fencing "are not sufficient to keep the kids * * * out" of what respondents perceived to be an "attractive nuisance". A review of the record reveals, however, that the proposed site is located in a rural zone district and is bounded by large tracts of undeveloped land, the smallest of which is 30 acres, and also by an acre of wetlands. While there are smaller lots ranging in size from 1 to 10 acres along Goode Street, inasmuch as the site is located approximately one quarter of a mile back from that road and is not visible therefrom, it is difficult to ascertain how this noncommercial, intermittently used mine with a small daily output can be out of harmony with the rural residential character of the small neighborhood that has sprung up along the road. The mine essentially being out of sight, the only logical disharmony can be ancillary noise, dust and traffic impacts attendant to ingress and egress. However, a study performed by the Department of Environmental Conservation found no significant noise, dust erosion, traffic or visual impacts in connection with the proposed operation. A report prepared by petitioner's expert came to the same conclusion. Indeed, the only negative impacts discernible from the record came in the form of general community objections as expressed in opinions such as the mine could negatively affect property values, Goode Street could not "take" heavy truck traffic, the proposed fencing would not keep out snowmobiles, the proposal to place gravel on only the first 150 feet of the access road is not enough and should extend back farther, the possibility that the access road might be used as a bicycle path, the fact that an old, presumably abandoned mine in the area is prone to trespassers, complaints of dust attendant to current dirt removal from the site, the presence of children in the area, and walkers and bikers along Goode Street. Apart from the fact that precedent holds it to be improper to disregard expert testimony proffered by the applicant in favor of generalized community objections as was done here (see, Matter of Market Sq. Props. v Town of Guilderland Zoning Bd. of Appeals, 66 NY2d 893; Matter of Pilato v Zoning Bd. of Appeals, supra), in my view there is simply nothing to suggest that the operation of this mine, as described in the record, would have any greater effect than that incident to the conducting of any other unconditionally

permitted uses in a rural zone, namely agricultural and farming activities, many of which impact traffic patterns, involve use of heavy equipment and have similar noise, dust and odor ramifications (cf., Matter of Lee Realty Co. v Village of Spring Val., supra, at 894).

For the foregoing reasons, I would affirm Supreme Court's judgment.

MIKOLL, J. P., LEVINE and HARVEY, JJ., concur with CASEY, J.; MAHONEY, J., dissents in a separate opinion.

Ordered that the judgment is reversed, on the law, with costs, determination confirmed and petition dismissed.