■ In the Matter of TROY SAND & GRAVEL CO., INC., et al., Appellants, v DAVID F. FLEMING JR., as Supervisor of the Town of Nassau, et al., Respondents. [68 NYS3d 540]—

Rose, J. Appeals from a judgment and an amended judgment of the Supreme Court (McNally Jr., J.), entered July 21, 2016 and September 20, 2016 in Rensselaer County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Town Board

of the Town of Nassau denying the request of petitioner Troy Sand & Gravel Co., Inc. for a special use permit.

In 2003, petitioner Troy Sand & Gravel Co., Inc. applied for a mining permit from the Department of Environmental Conservation (hereinafter DEC) to operate an open pit hard rock quarry requiring the blasting and crushing of solid rock formations on a 214-acre parcel of land in the Town of Nassau, Rensselaer County, located within a rural residential land use district that is zoned to allow commercial excavation by special use permit subject to site plan review. Troy Sand subsequently applied for the required special use permit and site plan approval from respondent Town Board of the Town of Nassau. As lead agency for the coordinated State Environmental Quality Review Act (*see* ECL art 8 [hereinafter SEQRA]) process, DEC issued a positive declaration and Troy Sand prepared a draft environmental impact statement (hereinafter EIS) in 2006. After a public hearing and comment period, Troy Sand prepared a final EIS in 2007 and, shortly thereafter, DEC issued its SEQRA findings approving the project and granting the mining permit. The parties have since engaged in related litigation that has brought the matter before us on six prior occasions (*see Troy Sand & Gravel Co., Inc. v Town of Nassau*, 125 AD3d 1170 [2015]; *Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau*, 125 AD3d 1188 [2015]; *Troy Sand & Gravel Co., Inc. v Town of Nassau*, 101 AD3d 1505 [2012]; *Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau*, 89 AD3d 1178 [2011], *lv dismissed* 18 NY3d 920 [2012]; *Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau*, 82 AD3d 1377 [2011]; *Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau*, 80 AD3d 199 [2010]).

In May 2010, the parties entered into a stipulation, which was memorialized as an order by Supreme Court (Lynch, J.), whereby they agreed that Troy Sand's application would be reviewed under Local Law No. 2 (1986) of the Town of Nassau (hereinafter Local Law No. 2). In August 2012, Supreme Court enjoined the Town Board from reassessing the environmental impacts of the proposed quarry to the extent already addressed by DEC's SEQRA determination. As a result, the Town Board issued a resolution of completeness and referred Troy Sand's application to respondent Planning Board of the Town of Nassau for review and recommendation. As required by Local Law No. 2, the Planning Board then held a four-day public hearing on the application. In December 2012, before the Planning Board issued its recommendation, we vacated the injunction against the Town Board, finding that DEC's SEQRA determi-

nation did not preclude the Town Board from considering the environmental and neighborhood impacts of the project in accord with the standards set forth in the Town's local zoning regulations (*Troy Sand & Gravel Co., Inc. v Town of Nassau*, 101 AD3d at 1507-1508). As a result of our decision, the Town Board rescinded its prior completeness resolution and reopened the administrative record. In February 2015, upon petitioners' appeal challenging the Town Board's recision, we clarified that, although the Town Board retained the authority to undertake an independent review of Troy Sand's application, it was not permitted to evaluate the proposed quarry's environmental impact based on information collected outside of the SEQRA process (*Troy Sand & Gravel Co., Inc. v Town of Nassau*, 125 AD3d at 1173). In July 2015, over the protest of Troy Sand, the Town Board, joined by the Planning Board, held a second public hearing on the application. After that hearing, the Town Board denied Troy Sand's application, as recommended by the Planning Board. Petitioners then commenced this CPLR article 78 proceeding seeking to annul the Town Board's determination. Supreme Court (McNally Jr., J.) dismissed the petition, thereby upholding the Town Board's denial of a special use permit, and petitioners now appeal from the judgment and amended judgment.[1]

First, we reject petitioners' contention that the Town Board violated the parties' May 2010 stipulation by holding its own public hearing pursuant to Town Law § 274-b. The stipulation provided, as relevant here, that the Town Board would review Troy Sand's application pursuant to Local Law No. 2, which requires that an application to the Town Board for a special use permit be referred to the Planning Board for a public hearing. Upon the advice of its counsel, the Town Board found that Town Law § 274-b, which was enacted after Local Law No. 2 (*see* L 1992, ch 694, § 2), required it to hold its own public hearing in addition to the one prescribed by Local Law No. 2 (*see* Town Law § 274-b [6]). While petitioners read the stipulation to say that Local Law No. 2, alone, would govern Troy Sand's application, we find that the stipulation is silent as to any other state or federal laws that may also apply to the review of a special use permit, including the indisputably applicable SEQRA and the Town Law. In our view, the clear intent of the stipulation was to avoid the application of prior or subsequent land use regulations of respondent Town of Nas-

---

1. The appeal from the judgment must be dismissed because the amended judgment supercedes it (*see Matter of Fifield v Whiting*, 118 AD3d 1072, 1073 [2014]).

sau, not those imposed by the state. In light of this, we find that the Town Board did not violate the stipulation by holding its own public hearing in accordance with Town Law § 274-b (6).

Petitioners also contend that Town Law § 274-b is inapplicable in its entirety where, as here, a town board has not delegated its power to approve special use permits to another administrative body or official. We cannot agree. Town Law § 274-b sets forth a number of provisions governing the approval of special use permits. Relevant to petitioners' argument, Town Law § 274-b (2) provides that a town board may, by zoning ordinance or local law, authorize another administrative body, such as a planning board, to grant special use permits. However, this subdivision does not apply here as the Town Board retained its authority to grant special use permits. Town Law § 274-b (6) separately requires the "authorized board" to conduct a public hearing on any special use permit application received. Based on our reading of the plain language of the statute (*see Matter of Avella v City of New York*, 29 NY3d 425, 434 [2017]; *Kellner v Town of Wappinger*, 145 AD3d 676, 677 [2016], *lv denied* 29 NY3d 902 [2017]), we find that the Town Board is the "authorized board" and, as such, it is required by Town Law § 274-b (6) to hold its own public hearing. Although we agree with petitioners that Town Law § 274-b (9) sets forth a shortened statute of limitations where a town board has in fact delegated its special use permit authority, we do not read the cases addressing this specific subdivision as standing for the proposition that Town Law § 274-b is inapplicable in its entirety where a town board has not delegated its special use permit authority to a planning board or other administrative body (*see Matter of Royal Mgt., Inc. v Town of W. Seneca*, 93 AD3d 1338, 1338-1339 [2012]; *Matter of Young Dev., Inc. v Town of W. Seneca*, 91 AD3d 1350, 1351 [2012]; *Matter of Chernick v McGowan*, 238 AD2d 586, 586-587 [1997]).

Nor can we agree with petitioners' contention that the Town Board violated our 2015 decision and order by holding its own public hearing at which it accepted additional environmental information. In that decision, we did not find that the Town Board's mere acceptance of additional environmental impact information outside of the SEQRA record would invalidate its determination. We found instead that the Town Board was required to rely upon the final EIS as the basis for its review of the proposed quarry's environmental impact because its zoning determination must find a rationale in its SEQRA findings

(*Troy Sand & Gravel Co., Inc. v Town of Nassau*, 125 AD3d at 1172-1173; *see* 6 NYCRR 617.11 [d] [1]). In our view, the Town Board's holding of a second public hearing, at which it accepted, among other things, additional environmental impact information, did not, in and of itself, violate our directive that the Town Board rely upon the final EIS in evaluating the proposed quarry's environmental impact. Nor are we persuaded that petitioners' due process rights were violated by the second public hearing. The record reflects that petitioners' counsel attended the second hearing, thus providing Troy Sand an opportunity to either rebut the submissions or request additional time to review and challenge the materials to the extent that they were not suitable for inspection at the hearing itself (*see Matter of McDonald v Zoning Bd. of Appeals of Town of Islip*, 31 AD3d 642, 643 [2006]; *Matter of Suratwala v Casey*, 172 AD2d 613, 613 [1991]; *compare Matter of Hampshire Mgt. Co. v Nadel*, 241 AD2d 496, 497 [1997], *lv denied* 91 NY2d 806 [1998]; *Matter of Sunset Sanitation Serv. Corp. v Board of Zoning Appeals of Town of Smithtown*, 172 AD2d 755, 755 [1991]).

Next, in considering petitioners' contention that nearly every conclusion in the Town Board's determination was arbitrary and capricious because it was contrary to the final EIS and not founded in the SEQRA record, we start with the premise that when a zoning law enumerates a use as allowable by a special use permit, it " 'is tantamount to a legislative finding that the permitted use is in harmony with the general zoning plan and will not adversely affect the neighborhood' " (*Matter of Retail Prop. Trust v Board of Zoning Appeals of Town of Hempstead*, 98 NY2d 190, 195 [2002], quoting *Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston*, 30 NY2d 238, 243 [1972]; *accord Matter of Frigault v Town of Richfield Planning Bd.*, 128 AD3d 1232, 1233-1234 [2015], *lv denied* 26 NY3d 911 [2015]). Nevertheless, an applicant must still demonstrate "compliance with the conditions legislatively imposed upon the permitted use" (*Matter of PDH Props. v Planning Bd. of Town of Milton*, 298 AD2d 684, 685 [2002]; *accord Matter of Blanchfield v Town of Hoosick*, 149 AD3d 1380, 1383 [2017]). Failure to satisfy even one legislative condition will provide a rational basis for the denial of a special use permit application (*see Matter of Wegmans Enters. v Lansing*, 72 NY2d 1000, 1001-1002 [1988]). A town board's determination in this regard will not be disturbed unless it is illegal, arbitrary or an abuse of discretion (*see* CPLR 7803 [3]; *Matter of Conway v Van Loan*, 152 AD3d 768, 769 [2017]; *Matter of Capital City Rescue Mission v City of Albany Bd. of Zoning Appeals*, 235 AD2d 815, 815 [1997]). Even if a contrary result is itself also supported by

the record, this Court will not substitute its own judgment for a town board's determination (*see Matter of Frigault v Town of Richfield Planning Bd.*, 128 AD3d at 1235).

As we have previously noted, "in conducting its own jurisdictional review of the environmental impact of [a] project, [a town board] is required by the overall policy goals of SEQRA and the specific regulations governing findings made by involved agencies to rely on the fully developed SEQRA record in making the findings that will provide a rationale for its zoning determinations" (*Troy Sand & Gravel Co., Inc. v Town of Nassau*, 125 AD3d at 1172 [internal quotation marks omitted]; *see* 6 NYCRR 617.11 [d] [1], [3]). Notably, however, a town's "SEQRA findings may differ from [a lead agency's] findings" (*Troy Sand & Gravel Co., Inc. v Town of Nassau*, 125 AD3d at 1173; *see Troy Sand & Gravel Co., Inc. v Town of Nassau*, 101 AD3d at 1508) because a town, as an involved agency, may "weigh and balance relevant environmental impacts with social, economic and other considerations" differently from the lead agency (6 NYCRR 617.11 [d] [2]; *see* New York State Department of Environmental Conservation, SEQR Handbook at 153 [3d ed 2010]).

Here, Troy Sand seeks a special use permit in a rural residential land use district, the spirit and intent of which is to maintain and protect the rural character and environmental quality of the Town while allowing for a mixture of housing types, home occupations and rural living opportunities (*see* Local Law No. 2 [1986] of Town of Nassau art II [B] [1]). Local Law No. 2 defines a "[s]pecial permit use" as one "which is deemed potentially desirable for the public welfare within a given district or districts but which is potentially incompatible with other uses provided therein. [A special permit] use shall therefore be subject to approval by the Town Board and to conditions set forth for such use as well as other applicable provisions of [Local Law No. 2]" (Local Law No. 2 [1986] of Town of Nassau art XII). "Commercial excavation" is a special permit use, requiring site plan approval, within a rural residential district (Local Law No. 2 [1986] of Town of Nassau art III [A]). "Commercial excavation" is defined, as relevant here, as the "[e]xcavation or extraction of stone, sand, gravel or topsoil for sale, or as an industrial operation," and includes "mine, quarry, sand pit, gravel pit, turf farm, topsoil stripping, and any similarly described place or activity" (Local Law No. 2 [1986] of Town of Nassau art XII).

In evaluating Troy Sand's application, the Town Board first recounted the history and development of the Town in order to

convey the historic and desired nature and character of its community. The Town Board noted, among other things, that it is home to a considerable number of lakes, streams, wetlands and wildlife, as well as the fifth largest unfragmented forest in the state. According to the Town Board, individuals are drawn to the Town's camp communities—including Camp Schodack, the Town's largest employer—in large part because of the scenery and natural character of the area. According to Troy Sand's application, 79 acres of the 214-acre parcel will be blasted and excavated over a series of six phases spanning 100 to 150 years. An additional 10 acres are proposed to include access roads, storm water collection ponds, a crushing plant, stockpile areas, employee and visitor parking, an emergency turnaround and an office building. The ultimate result of the mining would be an approximately 3,000-foot-long and 1,000-foot-wide rock face, with 275-foot-high benched walls, running approximately parallel to State Route 66. After the solid rock is blasted, excavated, crushed and processed, it would then be either sold on site or hauled by truck from the proposed quarry via State Route 66 to offsite locations. The proposed hours of operation for the mine are 6:00 a.m. to 7:00 p.m. Monday through Friday and 7:00 a.m. to 5:00 p.m. on Saturday with no operation on Sunday and six federal holidays. Blasting would be between 10:00 a.m. and 5:00 p.m. Monday through Friday.

In its lengthy determination, the Town Board evaluated Troy Sand's compliance with the general performance standards and other universally applicable land use regulations (hereinafter general land use standards) as well as the special use permit standards of Local Law No. 2. Initially, we agree with petitioners that the Town Board improperly referenced materials outside of the SEQRA record in concluding that Troy Sand failed to satisfy a number of the general land use standards. Our review of the record reveals that the Town Board's determinations regarding the general land use standards—with the exception of the standards regarding retail land use, glare and impervious surfaces—are either founded on information outside of the SEQRA record or entirely inconsistent with the final EIS. However, in our view, the Town Board's determinations regarding the three aforementioned standards are also irrational. We therefore conclude that the Town Board's determinations as to all of the general land use standards lacked sufficient rationale and were, thus, arbitrary and capricious. Nevertheless, we find that the Town Board's denial of Troy Sand's application based upon three of the four special use permit standards properly found its rationale in the final EIS. These standards require the Planning Board and the Town

Board to "consider the health, safety, welfare, comfort and convenience of the public, in general, and that of the residents of the immediate neighborhood in particular, and the environmental impact" of any proposed special use (Local Law No. 2 [1986] of Town of Nassau art VI [A]).

The first special use standard provides that "[t]he location and size of the use, the nature and intensity of the operations involved, the size of the site in relation to the use and the location of the site with respect to existing or future access shall be in harmony with the orderly development of the district" (Local Law No. 2 [1986] of Town of Nassau art VI [A] [1]). There is ample evidence in the SEQRA record that the proposed quarry will be a sizable operation, and the final EIS supports the Town Board's determination that the project would create a highly intensive industrial land use in an area where only one small commercial entity currently exists. Given that changes in land use trends can contravene orderly development in a district (*see Matter of Connors v Sullivan*, 171 AD2d 982, 983 [1991]), we find that the Town Board's determination that this particular proposed commercial excavation land use is not suited for this particular location is not irrational (*see Matter of Schadow v Wilson*, 191 AD2d 53, 57 [1993]).

The second special use standard requires that "the nature and intensity of intended operations shall not discourage the appropriate development and use of adjacent land and buildings nor impair the value thereof" (Local Law No. 2 [1986] of Town of Nassau art VI [A] [2]). In finding that this standard was not satisfied, the Town Board relied on, among other things, a property value impact analysis, prepared by an expert whose qualifications have not been challenged. The analysis concluded that the proposed quarry would, unequivocally, have a deleterious financial effect on existing homeowners in the surrounding area and could result in a significant decrease in neighboring property values. Although this analysis was submitted at the second public hearing, we find that the Town Board's reliance thereon is permissible inasmuch as it is not related to any environmental impact of the project and, thus, need not have originated from the SEQRA record (*see Matter of Develop Don't Destroy [Brooklyn] v Urban Dev. Corp.*, 59 AD3d 312, 316 [2009], *lv denied* 13 NY3d 713 [2009]). We also find that the Town Board was permitted to reject the property value analysis proffered by Troy Sand as it is within a town board's sole province to evaluate competing expert evidence before it (*see Matter of Albany-Greene Sanitation v Town of New Baltimore Zoning Bd. of Appeals*, 263 AD2d 644, 646 [1999], *lv*

*denied* 94 NY2d 752 [1999]). Based upon the foregoing, we find that the Town Board was justified in concluding that the probability of decreased property values associated with the proposed land use rendered the second special use standard unsatisfied (*see Matter of Cipperley v Town of E. Greenbush*, 262 AD2d 764, 765-766 [1999]).

The fourth special use standard requires that "[t]he character and appearance of the proposed use . . . shall be in harmony with the character and appearance of the surrounding neighborhood" (Local Law No. 2 [1986] of Town of Nassau art VI [A] [4]). The Town Board rationally concluded that the proposed project would alter the essential character of the Town and the immediate neighborhood, which is comprised of residential lots and undeveloped forest land valued by residents and tourists alike for the tranquility and recreational opportunities that the rural landscape affords.[2]

"In sum, it was in no way irrational, on this record, to find that petitioners failed to carry their burden of showing that their contemplated use of the subject property conforms with the standards imposed" (*Matter of Wal-Mart Stores v Planning Bd. of Town of N. Elba*, 238 AD2d 93, 99 [1998] [internal quotation marks and citations omitted]). As we previously held in this matter, "the SEQRA findings did not bind the Town [Board] to issue the requested special use permit or preclude it from employing the procedures—and considering the standards—in its own local zoning regulations, including the environmental and neighborhood impacts of the project" (*Troy Sand & Gravel Co., Inc. v Town of Nassau*, 101 AD3d at 1507). We recognize that the Town Board relied on environmental information that was outside of the SEQRA record and made factual findings with no basis in the final EIS in evaluating most of the standards it applied (*see e.g. Matter of Connors v Sullivan*, 171 AD2d at 983). However, inasmuch as the failure to meet even one applicable standard is a sufficient basis upon which to deny a special use permit application (*see Matter of Wegmans Enters. v Lansing*, 72 NY2d at 1001-1002), we cannot say that the Town Board's determination was irrational (*see Matter of R.J. Valente Gravel v Town of Kinderhook*, 250 AD2d 1014,

2. The third special use permit standard requires, among other things, that parking and service areas be screened from the view of adjacent streets and residential lots (*see* Local Law No. 2 [1986] of Town of Nassau art VI [A] [3]). We find that the Town Board's conclusion that the proposed quarry's access road, which requires some widening of the existing road, will not be sufficiently screened is arbitrary and capricious inasmuch as all access drives are necessarily seen at the point of entry.

1015 [1998]; *compare Matter of Eddy v Niefer*, 297 AD2d 410, 413 [2002]).

Petitioners lastly contend that Supreme Court erred in upholding the Town Board's determination despite the alleged conflicts of interest and bias of respondent David F. Fleming Jr., the Town Supervisor. While we agree with petitioners that Supreme Court erred in finding that a denial of their motion for a preliminary injunction to prevent Fleming from participating in the review of its application constituted law of the case and precluded their conflict of interest and bias claims (*see Town of Concord v Duwe*, 4 NY3d 870, 875 [2005]; *Rural Community Coalition, Inc. v Village of Bloomingburg*, 118 AD3d 1092, 1095 [2014]), we nevertheless find these claims to be lacking in merit. The location of real property owned by Fleming and his family near the site of the proposed quarry is an interest that Fleming has in common with many other citizens of the Town and, in our view, nothing in the record clearly demonstrates that he stood to gain any financial or other proprietary benefit from the Town Board's denial of Troy Sand's application that would necessitate annulling his vote or the determination (*see Matter of Eadie v Town Bd. of Town of N. Greenbush*, 47 AD3d 1021, 1024 [2008]; *Matter of Segalla v Planning Bd. of Town of Amenia*, 204 AD2d 332, 333 [1994]). Further, Fleming's opposition to the proposed quarry as a candidate running for public office on that platform does not constitute a conflict of interest within the meaning of General Municipal Law § 801 (*see Matter of Byer v Town of Poestenkill*, 232 AD2d 851, 853 [1996]). Opposition to the project, without more, cannot constitute bias or a conflict of interest inasmuch as a contrary determination "would effectively make all but a handful of [the Town's] citizens ineligible to sit on the [Town] Board" (*Matter of Ahearn v Zoning Bd. of Appeals of Town of Shawangunk*, 158 AD2d 801, 802 [1990], *lv denied* 76 NY2d 706 [1990]). Thus, because the alleged conflicts of interest and bias involve expressions of personal opinion, rather than any pecuniary or material interest in the denial of Troy Sand's application (*see Webster Assoc. v Town of Webster*, 59 NY2d 220, 227 [1983]; *Matter of Laird v Town of Montezuma*, 191 AD2d 986, 987 [1993]), we find that petitioners failed to establish a basis for setting aside the determination of the Town Board (*see Matter of Pittsford Canalside Props., LLC v Village of Pittsford*, 137 AD3d 1566, 1568 [2016], *lv dismissed* 27 NY3d 1080 [2016]; *compare Matter of Schweichler v Village of Caledonia*, 45 AD3d 1281, 1284 [2007], *lv denied* 10 NY3d 703 [2008]; *Matter of Keller v Morgan*, 149 AD2d 801, 802 [1989]).

Petitioners' remaining contentions have been considered and found to be without merit.

McCarthy, J.P., Devine and Mulvey, JJ., concur. Ordered that the appeal from the judgment entered July 21, 2016 is dismissed, without costs. Ordered that the amended judgment entered September 20, 2016 is affirmed, without costs.