DiGiacomo v State of New York (2020 NY Slip Op 02524)





DiGiacomo v State of New York


2020 NY Slip Op 02524


Decided on April 30, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 30, 2020

530020

[*1]Elvira M. DiGiacomo, Appellant,
v
State of New York, Respondent.

Calendar Date: February 18, 2020

Before: Egan Jr., J.P., Lynch, Mulvey, Devine and Colangelo, JJ.


Biersdorf & Associates, PA, New York City (Dan Biersdorf of counsel), for appellant.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for respondent.



Colangelo, J.
Appeals from a judgment and an amended judgment of the Court of Claims (Midey Jr., J.), entered April 10, 2019, upon a decision of the court in favor of claimant.
In 2013, defendant acquired by eminent domain a permanent easement over a portion of claimant's property in the City of Ithaca, Tompkins County abutting the Cayuga Inlet. The easement was acquired as part of defendant's establishment of the Cayuga Waterfront Trail, a project to create a pedestrian trail connecting parks and various recreational waterfront destinations along the Cayuga Inlet. Defendant also acquired a temporary easement over claimant's property to accommodate construction of the pedestrian trail. At the time the easements were acquired, claimant's property was improved with two buildings consisting of a four-unit commercial main building and a separate storage building. Puddledockers, a watercraft sales and rental company, rented the back of the main building and the separate storage building. In the main building, there were two additional tenants and one vacant unit. Prior to 2012, a pizzeria had occupied one of the units in the main building until a fire necessitated that the entire main building be rebuilt and, during this process, two of the units were heavily partitioned for use as office/retail space. These units remained partitioned at the time the easements were acquired.
In 2015, claimant commenced this action pursuant to EDPL article 5 seeking compensation of $130,000 or more, for direct and indirect damages plus interest, resulting from defendant's permanent and temporary taking of claimant's property. At trial, the Court of Claims was presented with conflicting expert calculations as to what monetary award would constitute just compensation to claimant for direct damages for the loss attributable to the permanent easement, indirect damages for the resulting diminution in her property value, and damages due to the temporary easement. Claimant's expert, Kevin Bruckner, testified that just compensation to claimant would be $228,400, while defendant's expert, Todd Thurston, testified that just compensation would be $110,600. Following the trial, the court issued a decision ordering that defendant pay compensation to claimant in the amount of $110,600 plus interest as of the date of the taking, for a total award of $165,063.51. Claimant appeals from the judgment and amended judgment that were entered upon the decision.[FN1]
Claimant contends that the Court of Claims erred by accepting the findings of defendant's expert and rejecting those of her expert in fashioning the compensation award. To that end, claimant contends that, among other things, defendant's expert erroneously based his pretaking valuation of the property on rents from existing tenant contracts instead of on market rents. Defendant counters that its expert considered actual income and expenses in determining the property value while claimant's expert used speculative and unproven hypotheticals.
We affirm. "When private property is taken for public use, the condemnor must compensate the owner so that he or she may be put in the same relative position, insofar as this is possible, as if the taking had not occurred" (Matter of Eagle Cr. Land Resources, LLC [Woodstone Lake Dev., LLC], 149 AD3d 1324, 1325 [2017] [internal quotation marks, brackets and citation omitted], lv denied 29 NY3d 916 [2017]; see US Const, 5th Amend; NY Const, art I, § 7 [a]). Given that, as relevant here, the appropriation of property involves "a partial taking of real property, [the] claimant is not only entitled to the value of land taken — i.e., direct damages — but also to consequential damages, which consist of the diminution in value of [the] claimant's remaining land as a result of the taking or the use of the property taken" (Woehrel v State of New York, 178 AD3d 1169, 1171 [2019] [internal quotation marks, brackets and citation omitted]; see Matter of Eagle Cr. Land Resources, LLC [Woodstone Lake Dev., LLC], 149 AD3d at 1326). The award must reflect "the fair market value of the property in its highest and best use on the date of the taking, regardless of whether the property is being put to such use at the time" (Matter of Eagle Cr. Land Resources, LLC [Woodstone Lake Dev., LLC], 149 AD3d at 1325-1326 [internal quotation marks and citations omitted]; see Matter of State of New York [KKS Props., LLC], 119 AD3d 1033, 1034 [2014]). It must be shown that there is a "reasonable probability" that the asserted use of the property "could or would have been made within the reasonably near future[,] and a use which is no more than a speculative or hypothetical arrangement in the mind of the claimant may not be accepted as the basis for an award" (Matter of City of New York [Broadway Cary Corp.], 34 NY2d 535, 536 [1974] [internal quotation marks and citations omitted]; see Matter of Queens W. Dev. Corp. [Nixbot Realty Assoc.], 139 AD3d 863, 865 [2016], lv denied 28 NY3d 901 [2016]). The claimant bears the burden to show that the alleged highest and best use is capable of being accomplished "within the reasonably near future" (Matter of City of New York [Broadway Cary Corp.], 34 NY2d at 536). "In determining the amount of damages, the findings must either be within the range of expert testimony, or be supported by other evidence and adequately explained by the court" (Woehrel v State of New York, 178 AD3d at 1171 [internal quotation marks and citations omitted]; see Matter of City of New York [Reiss], 55 NY2d 885, 886 [1982]).
Both appraisers agreed that the assessment of the highest and best use of claimant's property is to be based on four criteria — legal permissibility, physical possibility, financial feasibility, and maximum profitability of such use.[FN2] They also agreed that the highest and best use of the rear portion of the main building and the storage facility, at the time of the taking and thereafter, was Puddledockers. As to the rest of the property, Bruckner testified on claimant's behalf that a combination of retail in a front unit and a restaurant/cafÉ in the remaining two units represented the highest and best use at the time of the taking. Bruckner testified that a restaurant/cafÉ would generate an annual rent of $28,084, inclusive of a 10% reduction to account for the renovation costs that would be incurred by the tenant "to convert this space to a restaurant operation," as opposed to the actual rental income of $19,800 being generated. He based the projected rent to be derived from a restaurant/cafÉ use on a comparison of rents from properties already being put to that use and not requiring renovation, and which were located outside of the Ithaca market. Bruckner's pretaking valuation of the property was $511,800, inclusive of the projected revenue of $28,084 from the potential restaurant/cafÉ. He admitted that the highest and best use of the two units after the taking was not a restaurant/cafÉ but, rather, retail space. In reaching the conclusion that the posttaking value of claimant's property was $283,700, Bruckner incorrectly projected substantial rent reductions from existing tenants, when in fact the reductions were negligible.
By comparison, Thurston, whom the Court of Claims credited, opined that the highest and best use of the property at the time of the taking was an office/retail building, as it was then being used. He noted that the "heavily partitioned" units that Bruckner proposed to combine and convert into restaurant space had been deliberately converted by the prior owners to office/retail space after the fire, based in part on the challenge of having limited parking available for a restaurant. Thurston testified that claimant had no intention of creating a restaurant/cafÉ on the property, and that such use was merely a hypothetical condition that is "contrary to what exists as of our appraisal date" and must be identified as such. In addition, he opined that a substantial adjustment must be made in the valuation of a hypothetical condition based on "specific itemized and detailed analysis on the corresponding costs associated with having a restaurant tenancy." This would require consideration of, among other things, the building permit process, an architect, multiple points of ingress/egress for fire safety, a dumpster, and marketing the space as a restaurant tenancy. According to Thurston, modifying the structure to include a restaurant/cafÉ was not reasonably probable. In arriving at a posttaking value of $440,000, Thurston testified that he analyzed commercial rentals in the Ithaca market. From his calculations that "the pre-taking value was $550,000 and the after-taking value was $440,000," he concluded that the diminution in value due to the permanent easement was $110,000, and that an additional $600 was due to the temporary easement.
We find that the Court of Claims did not abuse its discretion in accepting the testimony and calculations of defendant's appraiser in its award of damages. The record amply supports the court's finding that defendant's appraiser "was more realistic about the potential uses, laid a proper foundation for his opinion, and appropriately applied all of the [highest and best use] criteria, rather than giving short shrift to one element or another" and considered the actual rents received, expenses and vacancy changes before and after the taking. As the court correctly determined, claimant's appraiser "engaged in hypothetical speculation without acknowledging that he was doing so, which belies the substance of his conclusions of value." Moreover, claimant's appraiser "posed a highest and best use in the before situation that was speculative, and artificially inflated a damages assessment where the proposed highest and best use in the after situation then yielded far less potential income." Accordingly, we find, in affirming the court's award of damages, that claimant failed to sustain her burden of showing that there is a reasonable probability that pretaking use as a restaurant/cafÉ could or would have been made within the reasonably near future (see Matter of City of New York [Broadway Cary Corp.], 34 NY2d at 536). As the court's findings are within the range of expert testimony (see Woehrel v State of New York, 178 AD3d at 1172), we see no basis upon which to disturb the award. In light of our holding, claimant's remaining claims are academic.
Egan Jr., J.P., Lynch, Mulvey and Devine, JJ., concur.
ORDERED that the appeal from the judgment is dismissed, without costs.
ORDERED that the amended judgment is affirmed, without costs.



Footnotes

Footnote 1: As the amended judgment was entered to correct the map number referenced in the judgment and supersedes the judgment, the appeal from the judgment must be dismissed (see Matter of Troy Sand & Gravel Co., Inc. v Fleming, 156 AD3d 1295, 1297 n 1 [2017], lv denied 31 NY3d 913 [2018]).

Footnote 2: Criteria are derived from a publication from the appraisal institute.